Tex.Cr.R. 595, 218 S.W. 367; Winters v. Winters, Tex.Civ.App., 282 S.W.2d 749; Tex.Dig., Witnesses, ☞ 256.

The refusal of the court to allow the appellant to inspect and use the witness Petropolis' notes for the purpose of cross-examining him under the facts here presented constitutes reversible error.

The judgment is reversed and the cause is remanded.

Opinion approved by the Court.

**B. F. CLARK et ux., Appellants,**

**v.**

**CITY OF CORPUS CHRISTI,**
Texas, et al., Appellees.

No. 13122.

Court of Civil Appeals of Texas.

San Antonio.

April 3, 1957.

David M. Coover, Wm. H. Shireman, Corpus Christi, for appellants.

John Ben Shepperd, Atty. Gen., A. M. LeCroix, Asst. Atty. Gen., I. M. Singer, City Atty., Travis A. Peeler, Asst. City Atty., Fisher Alsup, Fischer, Wood, Burney & Nesbitt, Wood, Pratt & Boykin, Corpus Christi, for appellees.

W. O. MURRAY, Chief Justice.

This suit was instituted by B. F. Clark and wife, Winnie Mae Clark, against the City of Corpus Christi, Texas, Nueces County, Texas, the Highway Commission of Texas, John Ben Shepperd as Attorney General of Texas, and Guaranty Title and Trust Company, a corporation, seeking a declaratory judgment determining the rights and status of plaintiffs with reference to the defendants and each of

them, and particularly insofar as plaintiffs' property may be taken and damaged by defendants, for the purpose of the construction of a State Highway and high-level roadway bridge across the ship channel which enters the Port of Corpus Christi. The property referred to was parts of Blocks 54 and 55 of the Rincon or Brooklyn Addition to the City of Corpus Christi, Texas, as shown by map or plat of record in Vol. "A", page 32, Map Records of Nueces County, Texas, and also a part of what is shown on the map as Vine Street. This property fronts on Avenue "C" a distance of about 600 feet and lies generally between Gardner and Elm Streets. Situated upon the property is a tourist court, known as "Grande Courts," consisting of eighty-six rental units and other improvements. To the east of plaintiffs' property there is an area described by plaintiffs as a public park, sometimes described as Fractional Blocks 37–42, both inclusive, of the Brooklyn Addition to the City of Corpus Christi. Directly across Avenue C from plaintiffs' property lie fractional Blocks 40 and 41, 42 is to the south and 37, 38 and 39 are to the north. This park lies between Avenue C and Timon Blvd. It is upon and over this park area that the State of Texas is preparing to construct the north approach to a high level roadway bridge over the ship channel.

Among other things, the trial court in effect found and decreed, that the park area had been dedicated to the public for park purposes and the fee or reversionary title, by mesne conveyances, has been transferred by the original dedicators to, and is now vested in, the State of Texas; that plaintiffs' property is separated from this park area by a dedicated street; that plaintiffs have no such property interest in this park area as would require that such interest be condemned and compensation paid therefor, in advance of the entry upon, and commencement of the construction of the high-level roadway on or over, such park area; that plaintiffs will have a cause of action against the State of Texas, upon being granted legislative permission to sue the State, for recovery of such damages, if any, as they may suffer because of the construction, maintenance and operation of such high-level roadway bridge, but that such damages, if any, at this time are anticipatory and speculative; that the Guaranty Title and Trust Company did not breach any covenant with plaintiffs by conveying to the State of Texas the reversionary title to the park blocks it held in trust; that the agreement of the City of Corpus Christi to indemnify the State of Texas against claims for damages was and is solely for the benefit of the State, and that plaintiffs are not in privity with such indemnity contract and cannot assert a cause of action thereon. From this judgment B. F. Clark and wife, Winnie Mae Clark, have prosecuted this appeal.

Appellants present the following three points and brief them together, to-wit:

### "First Point

"The error of the Court in concluding and holding as a matter of law that plaintiffs did not have such a property interest in the park in question, as to afford plaintiffs the protection of Article 1, Section 17, of the Constitution of Texas [Vernon's Ann.St.] thereby requiring the State of Texas to condemn such interest before it can commence construction of the highway and bridge in question.

### "Second Point

"The error of the Court in concluding and holding as a matter of law that after the dedication the fee simple or reversionary title in the dedicated public park in question remained in the Rincon Improvement Company and has since passed by mesne conveyances to and is now vested in the State of Texas.

"Third Point

"The error of the Court in concluding and holding as a matter of law that plaintiffs' tourist court property being separated from the dedicated public park in question, by a dedicated public street, plaintiffs' property is not contiguous to the park in question, and therefore plaintiffs have no such property interest in such dedicated public park as would be required to be condemned prior to entry upon and commencement of the construction of the high-level bridge and roadway on and over such park."

Following these points appellants make a general statement which we here copy in full:

"The parties will be referred to as in the Court below.

"The First, Second and Third Points are grouped because they are germane to the same proposition, which is the error of the Court in failing to recognize that plaintiffs own a property interest in the park in question, which park is being utilized by the State of Texas to support a high level bridge across the entrance and channel to the Port of Corpus Christi.

"This controversy arises because of a public improvement program instituted in Nueces County and Corpus Christi by the State Highway Department. This program contemplates the installation of an expressway upon U. S. Highway 181 from the Nueces Bay Causeway to a high level bridge across the Ship Channel, likewise to be installed by the State Highway Department. In order to obtain these public works by the State Highway Department, it became necessary for the City of Corpus Christi and Nueces County to furnish the necessary right of way for the work projects. The project as planned contemplates that the North approach to this high level bridge would be lo-

cated on what had been a public dedicated park on Fractional Blocks Nos. 37 to 42, inclusive, of the Brooklyn Addition to the City of Corpus Christi, Texas. A portion of this park lies just east of plaintiffs' tourist court, being separated therefrom by a dedicated street known as Avenue "C". This said park was a part of the park system of the City of Corpus Christi, Texas. The said City, joined by the Guaranty Title & Trust Company, conveyed the area dedicated as a public park to the State of Texas, the same to be used as a portion of the right of way for the high level bridge.

"Since there was to be a conversion of the area which had been a dedicated public park to an area to support a high level bridge, which would constitute a use of said area for a purpose other than park purposes, plaintiffs took the position that a valuable property right was being taken from them by the State of Texas, and that under Article 1, Section 17, of the Constitution of Texas, the State was required to condemn this interest of the plaintiffs.

"The Court in its judgment found that the park area in question had been dedicated to the public for park purposes; this finding was also contained in the Court's findings of fact and conclusions of law. The Court also found that this dedication was made by Rincon Improvement Company and/or F. M. Swearingen and Hazen Follansbee, by deeds of dedication attached to plaintiffs' original petition.

"It was stipulated that plaintiffs deraign title to the property described as Tract #1 in paragraph 2 of their original petition from F. M. Swearingen and Hazen Follansbee, by virtue of a regular chain of mesne conveyances.

"It was stipulated that the use of the area to the east of the eastern boundary of Avenue C and west of the

western boundary of Timon Boulevard, for the purpose of supporting the piers for said high level bridge, will constitute a use of a portion of said area for a purpose other than park purposes.

"The Court's attention is directed to four of the original exhibits which were transmitted with the record in this cause, to-wit:

"1. Plaintiffs' Exhibit No. 3, being the deed in plaintiffs' and the State of Texas chain of title when the park area in question was dedicated to the public.

"2. Plaintiffs' Exhibits Nos. 4 and 5, being instruments in plaintiffs' and the State of Texas chain of title wherein the park area in question confirmed the original dedication as being for Park Purposes only forever.

"3. Plaintiffs' Exhibit No. 6, being an instrument in plaintiffs' and the State of Texas chain of title, purporting to vest the title to the park area in question in W. E. Pope, in trust, to rededicate the area to the public for park purposes should a Court of proper jurisdiction hold that the original dedication had been cancelled or annuled on account of non use.

"The plaintiff, B. F. Clark, testified that he purchased the property which he now owns in May 1953, that it was a tourist court consisting of 86 units, that he paid $479,000.00 for the court, that the tourist court fronts about 600 feet on Avenue C, which separates the courts from the park area in question, that at the time he purchased the property he relied upon the park area in question continuing to exist and be used as a park, and except for such representation he would not have purchased the property, and it was not until sometime after he purchased the property that the high level bridge was discussed as a solution to the Bascule Bridge bottleneck.

"The witness Burleson testified that he was manager of the tourist courts now owned by plaintiff at the time the courts were constructed, that in 1928 the corporation which owned said courts planted trees and shrubs in the park area, that such park area was an asset to the tourist court, and it was used by the guests from the court, that to utilize the park area to support the structure for the high level bridge would damage the plaintiff's tourist courts."

This statement brings this case clearly under the rules laid down in the case of Kingsville Independent School District v. Crenshaw, Tex.Civ.App., 164 S.W.2d 49. As pointed out in that case there was no need for condemnation proceedings, because all necessary parties to such proceeding had conveyed any interest that they might have to the school district. The fact that the property owners might be damaged by the changing of the dedicated purpose of the land from a public park to a school ground would not make them necessary parties to a condemnation proceeding.

As stated by the trial court, if appellants here should suffer damages, their remedy would be a suit against the State, if legislative consent to sue the State would be given them.

Upon the day this case was set for oral argument, appellants filed a written instrument which they termed "Appellants' Argument." In this argument they took the position that they owned a reversionary interest in the fee title to the western half of the park adjacent to their property, and therefore they would be necessary parties to any condemnation proceeding brought with reference to changing the dedicated purposes of this park area. They base their contention largely upon the cases of Haines v. McLean, 154 Tex. 272, 276 S.W. 2d 771, and State v. Arnim, Tex.Civ.App., 173 S.W.2d 503. The facts in those cases are quite different from those in the present

case. As pointed out by Mr. Justice Garwood in the first case, the decision rested largely upon the details of the title history of the land involved. Likewise the decision here depends to a great extent upon the details of the title history of the land involved. Let us look at the details of this title history.

■ Appellants attached seven exhibits to their original petition, which has never been abandoned or superseded by any other pleading. A reading of these exhibits shows that the property on which appellants' tourist courts stand and the park area, at one time belonged to F. M. Swearingen and Hazen Follansbee, who conveyed to Joseph Hirsch and L. C. Wells, appellants' predecessors in title, the property now owned by appellants, and in that conveyance agreed to dedicate the property here described as Fractional Blocks 37 to 42, to the public for park purposes. Later this agreement was carried out, and these fractional blocks were dedicated to the public for park purposes and ultimately became a part of the park system of the City of Corpus Christi, and was maintained by the City as a public park. This park area lies between Avenue C and Timon Blvd. Appellants might well contend that they hold a reversionary title to one-half of that part of Avenue C which abuts their property, but they cannot claim a reversionary title to all the land upon which Avenue C lies, and also one-half of the park area which lies opposite their property on the other side of Avenue C. The trial court so found in his findings of fact, which are unchallenged by appellants and therefore binding upon them.

■ Appellants now contend that the park area is a narrow strip or gore of little or no value, lying between Avenue C and Timon Blvd., and when it ceased to be a park, at least one-half should pass to them because they own the adjacent property which lies across Avenue C from the park area. Appellants neither alleged nor attempted to prove that this park area was a narrow strip of land or gore lying between these two streets, that would be of little or no use to the original grantors, and therefore that such grantors did not intend to reserve a reversionary interest in themselves but intended that same should pass to their grantees. In their pleadings they described the park area as follows:

"That at the time the plaintiff acquired the said tourist courts, and long prior thereto, said courts fronted upon a large spacious public park which adjoined the eastern boundary of the above described premises. Such park affording ample light, air and recreational space for said tourist court, and in addition thereto, operating as buffer from the heavy vehicular traffic upon Timon Boulevard, and giving the said courts the benefit of the esthetic qualities of the area because of the landscaping which was maintained in said park."

Appellants are bound by this allegation and will not now be heard to contend that the park area is a narrow worthless strip or gore, so as to bring this case within the rules laid down in Haines v. McLean, supra. Nor is this a marginal road case, such as State v. Armin, supra.

Appellants admit that the question of the reversionary title to the park area, based upon the theory that such area constituted a narrow worthless strip or gore of land was not developed in the trial court. We conclude that not only is this true, but, as above stated, appellants' pleadings preclude such a contention.

The judgment of the trial court is affirmed.

POPE, J., not participating.