## KINGSVILLE INDEPENDENT SCHOOL DIST. et al. v. CRENSHAW et al.

### No. 11208.

Court of Civil Appeals of Texas. San Antonio, Texas.

July 8, 1942.

Rehearing Denied Aug. 2, 1942.

Denman, Franklin & Denman, of San Antonio, for appellants.

Boone, Henderson, Boone & Davis, of Corpus Christi, and E. H. Crenshaw, Jr., of Kingsville, for appellees.

MURRAY, Justice.

This suit was instituted in the District Court of Kleberg County by E. H. Crenshaw, Jr., and four other persons, resident citizens and real property owners of the City of Kingsville, Kleberg County, Texas, against the Kingsville Independent School District, its Trustees and Secretary, and the City of Kingsville, its Mayor, Commissioners and Secretary, seeking, among other things, a temporary injunction and on final hearing a perpetual injunction restraining the defendants from erecting a school house, or any other improvements, upon that part of "Chamberlain Park" which is north of an extension of the center line of Yoakum Avenue in the City of Kingsville.

After a hearing the trial judge granted the temporary injunction, as prayed for,

and the defendants below have prosecuted this appeal.

There is little or no conflict in the facts. The City of Kingsville is located upon land which was one time a part of the famous King Ranch. Mrs. Henrietta M. King conveyed this land to the Kleberg Town and Improvement Company for the purpose of establishing the Town of Kingsville. This conveyance contained certain restrictions as to drilling of wells and sale of liquor upon said land and providing for the right of forfeiture of title in case of violation of the restrictions. The Kleberg Town and Improvement Company filed a plat subdividing a portion of the land and on it was shown a large block of land marked "Chamberlain Park." Subsequently, Henrietta M. King built a large public high school building at approximately the center of the south two-thirds of this block, and subsequently the Kleberg Town and Improvement Company conveyed approximately the south two-thirds of the block marked "Chamberlain Park" to the Kingsville Independent School District for school purposes, and conveyed the north one-third of the Park to the City of Kingsville for park purposes. The deed provided that it was upon condition that the land shall be used as a public park for the pleasure and benefit of the people of the town of Kingsville and shall be maintained as such by the City, and that no building shall be erected thereon with the exception of a band stand for free musical concerts, and that upon violation thereof the title shall revert to the Kleberg Town & Improvement Company. Then followed the conditions contained in the original deed from Henrietta M. King to the Kleberg Town & Improvement Company in reference to wells, sale of liquor, etc., and reservations, such as rights of way for public utilities. The City for a number of years maintained the property by planting grass thereon and shrubs and preserved the trees thereon. The public has not resorted to the park, and the principal entries upon it have been merely to cross it by the pedestrians passing in that direction.

In recent months the United States Government has been installing a large naval base near the City of Kingsville, at a cost of from twelve to sixteen million dollars, a large part of which is situated inside of the school district. As a result of the construction of this naval base a large number of persons have been attracted to and have moved to Kingsville. In this manner the number of school children in the district has been greatly increased and has rendered it necessary to construct additional school buildings. The school district decided the only proper place to construct these buildings was upon the north one-third of "Chamberlain Park."

As a first step in condemning this Park for school purposes, the School Board asked the City of Kingsville to place a value upon the Park. This negotiation resulted in the City of Kingsville conveying the Park to the School District, and the Kleburg Town & Improvement Company and the King Ranch Company, as successors to Mrs. Henrietta M. King, executing a waiver to any rights they might have as to any reverter interest. Thus the necessity for condemnation proceedings was averted, as all had been accomplished by agreement that could have been accomplished by a condemnation proceeding.

Appellees contend that the Park having been dedicated to a public use, and they having bought the lots upon which their homes stand relying upon a belief that the Park would be perpetually maintained as a public park (appellees' homes face the park and are only separated from the park by a city street) the park cannot now be abandoned as a park and converted into a public school grounds.

Kingsville Independent School District has more than a hundred and fifty scholastics and, under the provisions of Article 1109c, Vernon's Ann.Civ.Stats., has the right of eminent domain to acquire the fee simple title to real property for school purposes.

Appellees assert, however, that this Park having already been devoted to a public use cannot be taken for another public use, unless it is impossible to exercise the new public use by any other means. In view of the fact that this park is shown to be by far the most satisfactory ground upon which to build the new school buildings, and that great inconveniences would arise if they were built elsewhere, the requirements of the law in this respect are fully met.

The School Board, vested by law with the power to act for the public school interest, has determined that the Chamberlain Park property was necessary and that it was not practical or possible (within the meaning of such terms by the courts), to use any other property. The City, acting through its Mayor and Commissioners, has de-

cided that the Park would be serving a better public use if abandoned as a park and converted to school purposes. Under such circumstances there is no occasion to litigate the question as to the paramount public use of the property.

In Sabine & East Texas Railway Company v. Gulf & Interstate Railway Company of Texas, 92 Tex. 162, 46 S.W. 784, 786, Justice Brown, speaking for the Supreme Court, said: "* * * it was intended by the legislature that the two corporations should co-operate in making these crossings, intersections, and connections, and, in case they should disagree upon either the place or manner of crossing or intersection, or as to the sum to be paid, then the right must be acquired by condemnation, as in other cases, and in such condemnation proceedings the differences between the corporations, whether as to point or manner of intersection or amount of compensation, can be adjusted."

▇ Applying the same rule here, if the City and the School District can agree upon the paramount public use of the property, why should they be compelled to institute condemnation proceedings?

Appellants cite many cases, of which City of Fort Worth v. Burnett, 131 Tex. 190, 114 S.W.2d 220, is typical. These cases all involve the threatened act of a public body to use property for some other purpose than that for which it has been dedicated, but in no way involve the power of eminent domain, and are therefore not in point here.

▇ Appellees do not claim to own Chamberlain Park, but only claim that they will be greatly damaged, as abutting property owners, if it is abandoned for park purposes. The law does not require that damages must be paid before the property can be taken, therefore, the School District has a right to take the property and the only remedy available to appellees is a suit for damages. McCammon & Lang Lumber Co. v. Trinity & B. V. R. Co., 104 Tex. 8, 133 S.W. 247, 36 L.R.A.,N.S., 662, Ann. Cas.1913E, 870; Shelton v. City of Abilene, Tex.Civ.App., 80 S.W.2d 351; Duvall v. City of Dallas, Tex.Civ.App., 27 S.W.2d 1105; Rische v. Texas Transportation Co., 27 Tex.Civ.App. 33, 66 S.W. 324.

The order of the trial court granting the temporary injunction is reversed and the cause, insofar as it seeks a temporary injunction, is dismissed.

Reversed and dismissed in part.