**B. F. CLARK, Appellant,**

**v.**

**STATE of Texas et al., Appellees.**

No. 13446.

Court of Civil Appeals of Texas.

San Antonio.

April 15, 1959.

Rehearing Denied May 13, 1959.

Wm. H. Shireman, David M. Coover, Corpus Christi, for appellant.

Will Wilson, Atty. Gen., H. Grady Chandler, Joseph G. Rollins, Asst. Attys. Gen., Austin, I. M. Singer, City Atty., J. F. Park, Milton W. Walton, Asst. City Attys., Corpus Christi, for appellees.

BARROW, Justice.

This suit was originally filed by plaintiff, B. F. Clark, against the State of Texas, for damages for the diversion of a dedicated public park to a right-of-way for the construction of a high level bridge. The State, over the objection of plaintiff, was permitted to implead the City of Corpus Christi as a third party defendant, seeking indemnity over and against the City in event of recovery by plaintiff against the State.

The State and City each answered by plea in abatement, in which they raised

the objection that plaintiff had no justiciable interest in the controversy and was not entitled to maintain a suit for damages. The trial court sustained the respective pleas in abatement, and upon plaintiff's refusal to amend, dismissed the cause. This appeal is from that judgment.

It was stipulated by the parties that on the hearing of the pleas in abatement, the only evidence adduced in support of the respective pleas was the following portions of plaintiff's first amended original petition, to-wit:

"* * * and said Fractional Blocks 37 to 42, inclusive, were being maintained by the City of Corpus Christi and were being used by the public exclusively for park purposes."

"* * * (3) That the City of Corpus Christi was maintaining, and the public was using, said fractional blocks as a park;"

It was further agreed that the stipulation should be incorporated in the transcript, and be considered as the statement of facts in the appeal for the purpose of passing upon the action of the court in sustaining said pleas and dismissing the cause.

The City also answered by numerous special exceptions, but they were not acted upon by the court.

Inasmuch as the questions here presented involve whether or not the plaintiff has a justiciable interest in the controversy, the decision requires the construction of the allegations of plaintiff's petition.

The following allegations appear in plaintiff's second original petition: That plaintiff is and was at all times pertinent to this suit the owner of certain real estate, being seven lots in Block No. 54, and ten and one-half lots in Block No. 55, of Brooklyn Addition to the City of Corpus Christi, Texas, as shown by the map or plat thereof, recorded in Volume "A", page 32, Map Records of Nueces County, Texas. That at the time plaintiff acquired the title to said real estate, and at all times pertinent to this suit, there has been located on said property a tourist court known as "Grande Courts," consisting of some eighty-two units or cabins in addition to other improvements, and the land area lying to the east of said Grande Courts, between Avenue C and Timon Boulevard was open space, occupied by no buildings or structures, was beautifully landscaped with mature palm trees and other native and ornamental trees and shrubs, and covered with grass. The said area being particularly described as "all of Fractional Blocks Forty (40) and Forty-one (41) of the Brooklyn Addition to the City of Corpus Christi, Texas, lying between Avenue C and Timon Boulevard." That on and prior to January 11, 1913, title to the east halves of Blocks 52 to 60, inclusive, and all of Fractional Blocks 37 to 43, both inclusive, of said Addition, lying between Avenue C and Timon Boulevard, as shown by the map or plat of said Addition, was vested in F. M. Swearingen and Hazen Follansbee. That on January 11, 1913, said Swearingen and Follansbee conveyed the east half of said Blocks 52 to 60, inclusive, to Joseph Hirsch and L. C. Wells, and it was the intention of the parties to such conveyance, that the property lying between the east line of the property therein conveyed and Timon Avenue should be dedicated as a public park, and that such dedication was for the use and benefit of the property therein conveyed, as evidenced by certain exhibits attached to plaintiff's petition. That the defendants recognized that said fractional Blocks 37 to 42, constituted a park which was dedicated by the owner thereof, for the use and benefit of the property above described, as well as other property contiguous to and fronting upon said park. That plaintiff deraigns title to said property in Blocks 54 and 55, by virtue of mesne conveyances emanating from Joseph Hirsch and L. C. Wells, and one of the intermediate grantors through and under which said title is deraigned is W. E.

Pope, under whom the State of Texas deraigns its title to said fractional blocks. That the conveyances to the defendant State of Texas of said fractional blocks expressly refer to certain instruments being Exhibits "B", "C", "D" and "E" attached to plaintiff's petition, which show the dedication of such property as a park for the benefit of plaintiff's property. That plaintiff deraigns title to part of said property by virtue of mesne conveyances emanating from Rincon Improvement Company, being one of the sources of the title through and under which the defendant State of Texas deraigns its title to said fractional Blocks 37 to 42.

Plaintiff alleges that by virtue of such dedication instruments he has an "easement" or "equity" appurtenant to his property, and that he has an interest different from the public generally in the perpetual and exclusive use of said fractional Blocks 37 to 42 as a park; and that therefore the injury which plaintiff received, was not in common with other property in the community being the North Beach Section of said City, but was peculiar to plaintiff's said lots.

Plaintiff further alleges that one of his predecessors in title acquired title to the property in November, 1928, and thereafter erected thereon the "Grande Courts" and commenced to improve said fractional Blocks 40 and 41, lying in front of said Grande Courts, by clearing the same, and planting thereon grass, shrubs, palm trees and flowers. That said Grande Courts thereafter maintained said fractional Blocks 40 and 41 as a park and tended and cultivated the plants and trees thereon, until sometime after December, 1936, when the area was annexed to the City of Corpus Christi. That sometime after the annexation of the area into the City of Corpus Christi, the City began and thereafter continued to maintain Blocks 37 to 42 as a part of its Park System, and by said acts the public accepted the dedication of said area for park purposes only forever, and said dedication thereby became fully and

finally effected. That plaintiff acquired his title to said Grande Courts in April, 1953, without any knowledge of any proposed diversion of said park area to a right-of-way for State Highway purposes. About February of 1954, the Texas Highway Commission tendered to Nueces County and the City of Corpus Christi a proposal for the construction of a six lane high level bridge over the entrance to Corpus Christi Ship Channel Basin, as a solution to what was known as the "Bascule Bridge Bottleneck." That by January, 1955, the State of Texas, acting by and through the State Highway Engineer, had decided upon the location of the high level bridge and had prepared a right-of-way map showing the proposed right-of-way for the ship channel crossing on U. S. Highway No. 181. That on April 6, 1955, pursuant to said proposal theretofore tendered by the Texas Highway Commission for the construction of said bridge, the City of Corpus Christi, joined by the Guaranty Title & Trust Company, as Trustee, executed and delivered to the State of Texas, a conveyance of all said fractional Blocks 37 to 42, which conveyance was accepted by the State of Texas, and a copy thereof is attached to plaintiff's petition. That on and prior to October 3, 1955, the location of said bridge and the plans and specifications relating thereto were fully known and had been made public by a publication thereof in the Corpus Christi Caller Times.

Plaintiff alleged that he neither consented to nor acquiesced in the selection of the route and location of said high level bridge. That on June 1, 1956, the State entered into a contract with Cage Brothers for the erection of the portion of said high level bridge opposite said Grande Courts. That the plans and specifications and said contract contemplated the erection of a bridge structure, commencing at about the south boundary line of Elm Street, the same being the northern boundary line of fractional Block 40. That said structure commenced and had a finished grade at an elevation of approxi-

mately 15.76' and thereafter rose in elevation in a southerly direction at the rate of 5% grade, so that said structure was approximately 50' in elevation as it passed opposite the southern boundary line of "Grande Courts." That there is now located upon said fractional Blocks 40 and 41, fourteen piers of "Bents", fully completed and in place, and the construction of the road bed upon said bents is now approximately 95% completed. Said construction having extended over a period of time from about the 26th day of June, 1956, until about October 28, 1957.

It is further alleged that when plaintiff purchased said Grande Courts it was represented to him that said fractional Blocks 37 to 42 was a public park, which had been donated and dedicated by the predecessors in title to said Grande Courts tract, and that same would never be used for any other purpose. That plaintiff relied upon said representation, coupled with the physical evidence upon the ground, that said fractional blocks were dedicated for park purposes only forever, and purchased said "Grande Courts" paying in excess of $400,-000 therefor. That he would not have purchased said property had he known that said fractional blocks would at this time be appropriated by the State of Texas for the right-of-way of said high level bridge. That the State of Texas acquired the title to said fractional Blocks 37 to 42 with actual and constructive knowledge of all the facts alleged in plaintiff's petition.

That the proposed use of said fractional Blocks 37 to 42 for the right-of-way for said high level bridge would constitute and would be a diversion of said fractional blocks from the use for which they had been dedicated, and that such diversion from an area dedicated exclusively and perpetually for park purposes, to the right-of-way for said high level bridge, did permanent and unabatable damage to said Grande Courts, in that it deprived said Courts of the future benefits of the open and landscaped area which said park afforded, and that upon the erection of said

bridge the Courts would be blighted by being for all practical purposes under said bridge and thereby subjected to the inconvenience caused by the motor vehicular traffic generated by said bridge, by increasing the noise, smell, fumes, dust, dirt, etc. which such motor vehicular traffic would create. That the direct and immediate effect of such diversion would be to permanently diminish the market value of said Grande Courts. That immediately before said diversion plaintiff's property was of the reasonable value of $250,000, and that the reasonable market value of plaintiff's property immediately after said diversion was the sum of $125,000, and that such diminution in value of plaintiff's property was and is directly and solely attributable to the diversion of said fractional blocks from its use for park purposes to the site for the construction of the proposed high level bridge.

The plaintiff further alleges that in making diversion of said property from one public use to another public use defendants, State of Texas and City of Corpus Christi, were acting under and were exercising the power of eminent domain, and that by virtue of the provisions of Art. 1, § 17, of the Constitution of Texas, Vernon's Ann.St., the damages suffered by plaintiff were and are the direct result of the acts of the Defendant State of Texas in the prosecution of said public works program. And that by reason of the indemnity contract entered into between the State and the City of Corpus Christi, plaintiff is entitled to recover of and from the City the amount of any judgment recovered by reason of the indemnity agreement, and that in any event plaintiff should be declared to have an equitable assignment of the judgment of the State of Texas against the City of Corpus Christi, to the extent of the amount of the judgment recovered by plaintiff against the State of Texas.

Plaintiff prayed for his damages in the sum of $125,000 as against the de-

fendant State of Texas, with interest thereon at the legal rate from October, 1955, or in the alternative, with interest from October, 1957, and that plaintiff have and be declared to have an equitable assignment to the extent of said judgment in any judgment which the State of Texas may recover against the City of Corpus Christi.

Two questions are presented for review by this appeal: (1) Appellant contends that the trial court erred in sustaining the pleas in abatement of the State and City, thereby holding that plaintiff did not have such a justiciable interest in the dedicated park, to entitle him to maintain a suit for special damages, and in dismissing said cause, thereby denying him the right to a determination of the fact issue of whether or not he had received special damages to his property which were compensable under Article 1, § 17, of the Constitution of Texas. (2) Appellant contends that the trial court erred in overruling his motion seeking to prevent the joinder by the State of the City as third party defendant, because the indemnity contract between the City and the State constituted the creation of a debt within the meaning of Article 11, §§ 5 and 7 of the Constitution of Texas.

We think appellant's first contention is well taken. While the instrument is denominated a plea in abatement, what the court actually had before it was an exception going to the merits of the alleged cause of action, or what was formerly known as a general demurrer. Such being the case, in determining this question the allegations of appellant's petition must be taken as true. Wilburn v. Missouri-Kansas-Texas R. Co. of Texas, Tex.Civ.App., 268 S.W.2d 726, 731.

Assuming that the area in question is a public park, do the facts alleged present a case of special damages, as distinguished from injuries or damages suffered by the community, vicinity or section generally? Without restating the allegations, we think they do.

Prior to the 1876 amendment of the Constitution compensation was recoverable only where there was an actual taking. The 1876 amendment of Art. 1, § 17, has included the words "damaged" or "destroyed." The Supreme Court in McCammon & Lang Lumber Co. v. Trinity & B. V. Ry. Co., 104 Tex. 8, 133 S.W. 247, 250, 36 L.R.A.,N.S., 662, held that recovery may be had even though a person does not own the property taken, but owns abutting land, or owns other land so situated with reference to the land taken that he suffers damages peculiar to his situation. And in passing on such a situation the Court said:

"The words 'damaged or destroyed' show the purpose to secure compensation for losses not within the language previously used, and evidently were intended to include effects upon private property of public enterprises which might be held not to constitute takings. The added words are inserted, not as a construction, but as an extension of the scope of the language previously used. It is therefore reasonably certain that the first view stated above, as to what constitutes the taking of property, was assumed in the framing of the new provision, and compensation was exacted for injuries which are not regarded as takings within that view. Since the making of compensation in advance is required for takings and not for other injuries, the several words must be held to make an important distinction and not to have been used out of abundant caution, only, in order to remove all doubt as to the right to compensation. Hence the word 'taken' ought not to be held to include all cases that are covered by the others, and we think the Courts of Civil Appeals have correctly held, in the four cases last above mentioned, that those kinds of injuries that result to those owning lots abutting on streets but not owning the fee in the land in the streets

from railroads thereon are not the taking, but the damaging, of property."

This same principle has been followed in Kingsville Independent School Dist. v. Crenshaw, Tex.Civ.App., 164 S.W.2d 49; City of Weatherford v. Martin, Tex.Civ. App., 120 S.W.2d 618; Duvall v. City of Dallas, Tex.Civ.App., 27 S.W.2d 1105; Johnson v. Lancaster, Tex.Civ.App., 266 S. W. 565; Dallas County v. Barr, Tex.Civ. App., 231 S.W. 453.

In Kingsville Independent School Dist. v. Crenshaw, supra, (writ refused) which was a suit by abutting property owners to enjoin the diversion of a public park to another public use, this Court, in an opinion by Chief Justice Murray, said:

"Appellees do not claim to own Chamberlain Park, but only claim that they will be greatly damaged, as abutting property owners, if it is abandoned for park purposes. The law does not require that damages must be paid before the property can be taken, therefore, the School District has a right to take the property and the only remedy available to appellees is a suit for damages. McCammon & Lang Lumber Co. v. Trinity & B. V. R. Co., 104 Tex. 8, 133 S.W. 247, 36 L.R.A., N.S., 662, Ann.Cas.1913E, 870; Shelton v. City of Abilene, Tex.Civ.App., 80 S.W.2d 351; Duvall v. City of Dallas, Tex.Civ.App., 27 S.W.2d 1105; Rische v. Texas Transportation Co., 27 Tex.Civ.App. 33, 66 S.W. 324." [164 S.W.2d 51.]

The appellees, State and City, rely heavily upon San Antonio Conservation Society v. City of San Antonio, Tex.Civ.App., 250 S.W.2d 259 (writ refused). We think this case is clearly distinguishable from the instant case. In the San Antonio case the plaintiffs brought the suit as taxpayers, property owners and residents of the City. It was a class suit on behalf of all other property owners, taxpayers, citizens, qualified voters and residents of the City, to enjoin one of the defendants from erecting a private bridge across the San Antonio River, which river and its banks were alleged to be beautified and maintained as a park; and in the alternative for $100,000 rental to be paid to the City of San Antonio. While it was alleged that some of the plaintiffs were abutting property owners along the river, no property right was claimed as such, nor was any claim for special damages made as such, as distinguished from the injuries suffered by the people of the City generally. Whereas, in the instant case appellant has sued as an individual, claiming his special damages to his individual property, and seeking special damages peculiar to his own property, as distinguished from injuries to the public generally.

Genard v. City of San Antonio, 307 S.W. 2d 592, is likewise not in point. In that case this Court held that the plaintiffs, being citizens and taxpayers whose property did not abut on the public plaza may not enjoin its diversion from a public market to another use.

The law is settled in this State that where the State is acting under the power of eminent domain and a person owns property actually taken, or does not own the property taken but owns lots abutting on the property taken, or where he owns neither the property taken nor abutting property, but owns property so situated with reference to the property taken that he suffers damages peculiar to his situation, he comes within the provision of Article 1, § 17, of the Constitution of the State of Texas and is entitled to his damages. McCammon & Lang Lumber Co. v. Trinity & B. V. R. Co., supra; Kingsville Independent School Dist. v. Crenshaw, supra. The measure of damages is the reasonable market value of the property immediately before the diversion less such value immediately thereafter, and such damages must be peculiar to the property owner as distinguished from those suffered in common with others generally.

Appellant's second contention is without merit. He is not in a position to complain of any invalidity of the contract of indemnity between the State and the City.

For the error above pointed out, the judgment is reversed and the cause remanded.

POPE, J., not participating.