THE ATTORNEY GENERAL
OF TEXAS
AUSTIN, TEXAS 78711



CRAWFORD C. MARTIN
ATTORNEY GENERAL

July 17, 1968

Honorable John F. Pettit
County Attorney
Val Verde County
Del Rio, Texas 78440

·Opinion No. M-260

Re: Authority of the Commis-
sioners Court of Val Verde
County to transfer certain
real property to the Val
Verde County Hospital
Authority created pursuant
to the provisions of Arti-
cle 4494r, Vernon's Civil
Statutes.

Dear Mr. Pettit:

Your request for an opinion on the above subject mat-
ter reads, in part, as follows:

"Recently the Commissioner's Court of Val
Verde County, by order of said Court, created
the Val Verde County Hospital Authority in ac-
cordance with the provisions of Article 4494r
v.a.c.s. Presently Val Verde County operates
and maintains a hospital, Val Verde Memorial
Hospital, which the Court anticipates trans-
ferring to the newly created Authority. The
existing hospital was built by the County with
funds derived from a bond issue; and title to
the real estate upon which the hospital is
situated is vested in the County.

" . . . .

"Therefore, I respectfully request your
opinion as to whether a transfer by the Com-
missioner's Court of Val Verde County of all
the physical assets of the Val Verde Memorial
Hospital, including the real estate upon which
said hospital is situated, to the Val Verde
County Hospital Authority is authorized under
the laws of the state of Texas."

The pertinent provisions of Article 4494r, Vernon's
Civil Statutes, reads as follows:

"Section 1. County Hospital Authorities
without taxing power may be created as herein-
after provided. This law shall be known as the
'County Hospital Authority Act.'

"Sec. 2. As used in this law, 'County'
means any county in the State of Texas; 'Govern-
ing Body' means the Commissioners Court of a county;
'Authority' means a County Hospital Authority
created under this Act; 'Board' or 'Board of Dir-
ectors' means the board of directors of the Au-
thority; 'Bond Resolution' means the resolution
authorizing the issuance of revenue bonds; 'Trust
Indenture' means the mortgage, deed of trust or
other instrument pledging revenues of, or creat-
ing a mortgage lien on properties, or both, to
secure the revenue bonds issued by the Authority;
'Trustee' means the trustee under the Trust
Indenture.

"Sec. 3. When the Governing Body of a
county shall find that it is to the best
interest of the County and its inhabitants to
create a County Hospital Authority, it shall
pass an order creating the Authority and desig-
nating the name by which it shall be known. The
Authority shall comprise only the territory in-
cluded within the boundaries of such County and
shall be a body politic and corporate and a
political subdivision of the State. It shall
have the power of perpetual succession, have a
seal, may sue and be sued and may make, amend
and repeal its bylaws.

"....

"Sec. 7. The Authority may issue revenue
bonds to provide funds for any of its purposes.
Such bonds shall be payable from and secured
by a pledge of the net revenues to be derived
from the operation of the hospital or hospitals
and any other revenues resulting from the owner-
ship of the hospital properties. The bonds may
be additionally secured by a mortgage or deed of
trust on real property of Authority or by a
chattel mortgage on its personal property, or
by both.

"....

"Sec. 17. For the purpose of carrying out
any power conferred by this Act, Authority shall
have the right to acquire the fee simple title
to land and other property and easements by con-

demnation in the manner provided by Title 52, Revised Civil Statutes as amended, relating to eminent domain. Authority is hereby declared to be a municipal corporation within the meaning of Article 3268 of said Title 52. The amount of and character or interest in land, other property and easements thus to be acquired shall be determined by the Board of Directors." (Emphasis added.)

In view of the foregoing provisions, a Hospital Authority created pursuant to the provisions of the above quoted statute constitutes a separate entity, a body politic and corporate, and a political subdivision of the State with the power to issue revenue bonds, but without the power of levying or collecting taxes; and that Authority also possesses the right or power of eminent domain. The statute does not expressly or impliedly limit the right or power given.

Since the Val Verde County Hospital Authority may exercise power of eminent domain pursuant to the provisions of Section 17 of Article 4494r, it has the power to acquire by condemnation the real estate referred to in your request. City of Tyler v. Smith County, 151 Tex. 80, 246 S.W.2d 601 (1952); Kingsville Independent School District v. Crenshaw, 164 S.W.2d 49 (Tex.Civ.App. 1942, error dism., cor.judgt.); El Paso County v. City of El Paso, 357 S.W.2d 783 (Tex.Civ.App. 1962, no writ).

We do not find any specific statutory provision authorizing transfer of real estate from the county to the Authority and ordinarily in the absence of such specific authorization the county could not dispose of its real estate in this manner. However, in view of the decisions in City of Tyler v. Smith County, supra., Kingsville Independent School District v. Crenshaw, supra., and El Paso County v. City of El Paso, supra., an exception to the general rule exists in view of the fact that the Authority has power of eminent domain. The case of El Paso County v. City of El Paso, supra., involved a suit for declaratory judgment to determine the validity of a transfer of real property from the county to the city. The court in upholding the transfer made the following observations, beginning at 357 S.W.2d 785:

"Ordinarily there could be no doubt that the County, like any other political subdivision of the State, could dispose of its real estate only in strict adherence to the pertinent statutes. Here, however, the City has cited two

cases that appear to be an exception to this rule. These cases are City of Tyler v. Smith County, 151 Tex. 80, 246 S.W.2d 601 (S.Ct.), and Kingsville Ind. School Dist. v. Crenshaw, Tex.Civ.App., 164 S.W.2d 49 (dis'm. cor. judg.). ...The Supreme Court held that the county owned the property in fee simple, with the city having no rights in the square except its street easements along the sides, and while the county had the right to remove the courthouse, the entire square was impressed with a public use and therefore could not be diverted to private use or sold to private agencies or persons. On motion for rehearing, parties asked the court if its opinion meant that the city could never connect its highway by running a street through the square. The court answered pointing out that such was not the meaning of its original opinion, but that the City of Tyler (like El Paso), being a home-rule city, had the right of condemnation, and in that right was contained the right to condemn public as well as private property.... The Supreme Court then went on to say:

"'If counsel will refer to Kingsville Independent School District v. Crenshaw, Tex. Civ.App., 164 S.W.2d 49, (error dismissed, cor.judgt.) they will find how the desired result may be accomplished even without resort to condemnation proceedings.'

" ....

"Article 1577 requires the appointment of a commissioner to sell county land at public auction, but it is obvious that this statute could not be complied with in either the Tyler case or this case, because the land was impressed with a trust and public use, and could not otherwise be employed; and this is likely one of the reasons why the Supreme Court did not mention this article or suggest that it had to be complied with......

" ....

"'We think the statutes hereinabove re-

ferred to do apply wherever a political sub-
division, subject to such statutes, desires to
dispose of any of its public land to an in-
dividual or private agency, but not where such
political subdivision with the power of eminent
domain and condemnation chooses to deal with
its opposite number and reach an agreement as
to the change of public use, rather than to
resort to the expensive and tedious medium of
litigating the entire matter through the
courts, thereby holding up the public benefit
and depleting to some extent the tax funds of
the subdivisions involved."

In view of the foregoing, since Val Verde County Au-
thority is vested with the power of eminent domain, it may choose
to deal with the county and reach an agreement as to the change
of title to all the physical assets of the Val Verde Memorial
Hospital, including the real estate upon which said hospital
is located, rather than to resort to condemnation proceedings.
El Paso County v. City of El Paso, 357 S.W.2d 783 at 787.

You are therefore advised that if the Commissioners
Court of Val Verde County and the Board of Directors of the
Val Verde County Hospital Authority determine that it is to the
best interest of both the county and the Authority to consummate
such transfer, the Commissioners Court of Val Verde County has
the authority to make such transfer.

S U M M A R Y

A county has the authority to transfer a
County Hospital to a Hospital Authority created
pursuant to the provisions of Article 4494r,
Vernon's Civil Statutes.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John Reeves
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
James McCoy
Roger Tyler
Houghton Brownlee
James Broadhurst

A. J. CARUBBI, JR.
Executive Assistant