**SIERRA CLUB et al., Appellants,**

v.

**AUSTIN INDEPENDENT SCHOOL DISTRICT et al., Appellees.**

No. 11968.

Court of Civil Appeals of Texas, Austin.

Dec. 20, 1972.

Rehearing Denied Jan. 17, 1973.

Paul W. Jones, Jr., Austin, for appellants.

Frank W. Elliott, Austin, for appellees.

O'QUINN, Justice.

Decision in this appeal turns on whether the governing body of a home rule city, forbidden by statute and by city charter to alienate public park land without prior approval of the electorate, may accomplish alienation without assent of the people by stipulating in condemnation court that use of the land for a public school plant is paramount to its use by the public at large as a park.

The tract of park land involved in this suit consists of 32.26 acres of land, situated on the north bank of the Colorado River, which the City of Austin acquired in 1932 as a part of about 236 acres, through the philanthropy of Andrew J. Zilker. More than 192 acres of the land was situated on the south bank of the Colorado River and was developed by the City as Zilker Park. It was from the land on the north bank of the river, containing 43.51 acres, that the 32.26-acre tract in this lawsuit was carved to be devoted to school purposes.

The conditions under which the City of Austin acquired the entire 236 acres were that the land would "be used for public park purposes only," and that the City would pay $200,000 to the Austin Independent School District "for the equipment, maintenance and promotion of the needs and best interests of the Schools of Manual Training in the City of Austin . . . for the instruction of boys and girls . . . in the useful arts and sciences . . . ."

Purchase of the 236 acres, in compliance with the Zilker proposal, was approved by the electorate on December 21, 1931, at an election called for that purpose, and subsequently actual conveyance of the land was effected by deed from the school trustees to the City of Austin on August 1, 1932, in accordance with the Zilker proposal. The first $50,000 of the consideration of $200,000 was paid in cash from proceeds of City of Austin "Parks and Playgrounds Bonds," and the remaining $150,000 was paid in annual installments of $10,000 each, with interest at six percent payable annually.

Article 1019, Vernon's Annotated Revised Civil Statutes of Texas, provides in pertinent part:

"No public square or park shall be sold . . . until the question of such sale . . . has been submitted to a vote of the qualified voters of the city or town, and approved by a majority of the votes cast at such election."

Provisions of this article are made applicable to home rule cities, such as the City of Austin, by Article 1020 in the clause providing for enforcement in ". . . cities over five thousand population which have no special charter . . . ." See Zachry v. City of San Antonio, 157 Tex. 551, 305 S.W.2d 558, 559 (1957).

As adopted by the electorate in 1953, the revised charter of the City of Austin, provides, in Article II, section 4:

"All powers and authority which are expressly or impliedly conferred on or possessed by the city shall be vested in and exercised by the council; *provided, how-*

*ever, that the council shall have no power to, and shall not*:

"(a) Sell, convey, lease, mortgage, *or otherwise alienate* any land which is now, or shall hereafter be, dedicated for park purposes, unless the qualified voters of the city shall authorize such act by adopting in a general·or special election a proposition submitting the question and setting forth the terms and conditions under which such sale, conveyance, lease, mortgage, *or other alienation is to be made*." (Emphasis supplied.)

In June of 1971 the city council, acting through the city manager, entered into a contract with the school trustees under which the Austin Independent School District acquired an option to purchase the 32.26 acres in question as a "school site," an option the school trustees later voted to exercise.

The city council and the school trustees provided in the option contract that, "In the event eminent domain proceedings are instituted . . . [the parties stipulated the cash market value of the tract]" and ". . . Further, only for such purposes of eminent domain, SELLER and PURCHASER shall, and do hereby stipulate that the paramount public use of said premises is as a school site."

Prior to exercising the school system's option under the contract, the trustees caused eminent domain proceedings to be instituted and held a meeting at which the trustees found that the requirements of Article 5421q, V.A.C.S. (Acts 1969, 61st Leg. p. 838, ch. 276) had been satisfied. Article 5421q provides for public hearing to determine whether there exists a feasible and prudent alternative to taking park land and whether the proposed project taking the park land includes all reasonable planning to minimize harm to the park land.

The school system pursued its proceedings in condemnation, at which the city council stipulated that the paramount public use of the park land was as a school site, and the proceedings terminated in a judgment awarding the tract to the school district for a school plant.

Appellants, plaintiffs below, are the Sierra Club, a nonprofit corporation having special interests in conservation and natural resources, and four persons who are qualified voters and taxpaying property owners of the City of Austin.

Appellees, defendants below, are the City of Austin, the mayor, other members of the city council, and the city manager; and the Austin Independent School District and the president and other members of the board of trustees of the district.

Plaintiffs sought a judgment in district court to set aside the option contract between the city and the school district as void and constituting a cloud upon the city's title to the 32.26 acres; to set aside the proceedings in eminent domain in the county court at law as void because awarded through collusive action of the city and the school district in stipulating use of the land as a school site to be paramount to its dedicated use as a public park; and to enjoin the school district from exercising any dominion over the tract pending final determination of the cause on its merits.

The cause was heard by the trial court without a jury on April 7, 1972, and the court entered judgment on April 19 denying all relief sought by plaintiffs.

The trial court found the following facts, set out in the judgment:

". . . the public land in controversy . . . was public land dedicated as park land by the City of Austin prior to its taking by . . . [the] School District, in an eminent domain suit . . . [and] all requirements of Article 5421q . . . have been duly and lawfully met and fulfilled; and . . . the paramount public use of said land is as a school site and not park land."

The trial court also made conclusions of law, set out in the judgment:

". . . as a matter of law the . . . School District . . . possessed the power to acquire, take, and hold by the exercise of eminent domain or otherwise, the public park land in controversy for the purposes granted . . . [the District] by by law.

". . . further . . . as a matter of law . . . the provisions of Article 1019 . . . and Article II, section 4 of the [Austin] Charter . . . do not preclude the taking of the public park land in controversy by . . . [the] School District, without elections as provided by such Article or Charter provision, and . . . such Article and Charter provision have no application to the issues of fact or law raised by the pleadings herein."

The school trustees and the city council contend on appeal that the issues of this case have been determined by the Supreme Court of Texas, and that the trial court correctly found as a matter of law that the transactions carried on by the city council and the school officials effected a lawful transfer of the park land and a change of its use from park to school purposes.

Appellants maintain that the school district is without power by statute to condemn land belonging to the public and that the city council acted without authority and contrary to the provisions of Article 1019, V.T.C.S., and in contravention of the express denial by city charter of power to alienate by any means dedicated park without prior approval by the qualified voters.

Appellees insist that the procedures pursued by the city council and the school trustees in this case were first approved in Kingsville Independent School District v. Crenshaw, 164 S.W.2d 49 (Tex.Civ.App. San Antonio 1942, writ ref. w. o. m.). In that case the court of civil appeals declined to apply the doctrine of City of Fort Worth v. Burnett, 131 Tex. 190, 114 S.W.2d 220 (1938) because *Burnett* did not involve the power of eminent domain. The court in *Kingsville* said, ". . . there is no occasion to litigate the question as to the paramount public use of the property."

In addition to its refusal in the Kingsville case of an application for writ of error for want of merit, the Supreme Court subsequently on two occasions approved the holding in *Kingsville*. The same controversy was before the court of civil appeals later in an appeal from final judgment, and the intermediate court decided the cause on the principles announced in its earlier decision. The Supreme Court later refused an application for writ of error without qualification. Kingsville Independent School District v. Crenshaw, 252 S.W.2d 1022 (Tex.Civ.App. San Antonio 1943, writ ref.).

Nearly ten years later, when a similar controversy was before the Supreme Court, on motion for rehearing the Supreme Court stated:

"If counsel will refer to Kingsville Independent School District v. Crenshaw, Tex. Civ.App., 164 S.W.2d 49 (error dismissed, cor. judgt. [sic]) they will find how the desired result may be accomplished even without resort to condemnation proceedings." City of Tyler v. Smith County, 151 Tex. 80, 246 S.W.2d 601, 607 (1952).

Other public bodies, acting through their governing authorities, have employed the short cut to alienation approved in these decisions and have had their acts approved by the courts. See El Paso County v. City of El Paso, 357 S.W.2d 783 (Tex.Civ.App. El Paso 1962, no writ); City of San Antonio v. Congregation of the Sisters of Charity of the Incarnate Word, 360 S.W.2d 580 (Tex.Civ.App. Waco 1962, writ ref. n. r. e.) cert. den. 372 U.S. 967, 83 S.Ct. 1093, 10 L.Ed.2d 131; McCarthy v. City of Houston, 389 S.W.2d 159 (Tex.Civ.App. Corpus Christi 1965, writ ref. n. r. e.); Bolton v. City of Waco, 447 S.W.2d 718 (Tex.Civ.App. Waco 1969, writ ref. n. r. e.).

Appellants argue that Article 1019, requiring approval by the electorate before park land may be sold by a city, was not made an issue before the court of civil appeals in *Kingsville*, and therefore subsequent action of the Supreme Court on application for writ of error leaves the issue undecided. We agree with this contention, although appellees argue that in the application for writ of error in *Kingsville* the petitioners raised the issue and pointed out that there had been no compliance with Articles 1017, 1019, or 1020, and that the question of sale of the park had not been submitted to the qualified voters of Kingsville.

■ In arriving at our conclusion as to whether the holding in *Kingsville* is *stare decisis* on this issue, we look only to the opinions of the court of civil appeals as published. These opinions do not mention Article 1019, nor is the issue which the statute raises discussed by the court of civil appeals. We assume that the Supreme Court in refusing the application for writ of error examined the opinions of the intermediate court as decisions made after argument on the questions of law, fairly arising in the case and necessary to its determination, and as stated in the published opinion. See State v. Valmont Plantations, 346 S.W.2d 853, 878 (Tex.Civ.App. San Antonio 1961, affirmed 163 Tex. 381, 355 S.W.2d 502 (1962). The issues settled in *Kingsville*, by reason of the Supreme Court's action on the application for writ of error, are those issues only which are found in the opinions of the court of civil appeals. .

To say that *Kingsville* is controlling in the present case is to attribute to the opinions of the court of civil appeals holdings not found in the published opinions and to assume that the Supreme Court, in refusing without qualification the application for writ of error, intended to approve holdings not found in the opinions. We have examined and will here review the several cases the city and the school dis-

trict rely upon in contending that the doctrine of *Kingsville* is applicable to the facts of this cause.

Bolton v. City of Waco, 447 S.W.2d 718 (Tex.Civ.App. Waco 1969, writ ref. n. r. e.) : This case did not involve two competing public bodies. The City of Waco under this decision was permitted to construct a roadway through Cameron Park without obtaining consent of the voters. The court held that the statutes were not applicable to the facts. The park land was not sold, but retained by the city, and under Article 1175, sec. 15, the court stated, the city could condemn without consent of the electorate.

Clark v. City of Corpus Christi, 301 S.W.2d 168 (Tex.Civ.App. San Antonio, 1957, no writ): Although the court cited *Kingsville,* the decision was limited to the principal holding that landowners of property abutting a park do not have a reversionary interest in the land to be condemned in advance of entry upon the park to construct a highway and bridge.

McCarthy v. City of Houston, 389 S.W.2d 159 (Tex.Civ.App. Corpus Christi 1965, writ ref. n. r. e.) : In this case the court held that a flood control district did not have to wait for its property to be condemned by the city but could voluntarily "grant its surface fee interests in the property to City." The prohibition found in Article 1019 was not involved.

City of San Antonio v. Congregation of Sisters of Charity, 360 S.W.2d 580 (Tex. Civ.App. Waco 1962, cert. den. 372 U.S. 967, 83 S.Ct. 1093, 10 L.Ed.2d 131): The prevailing parties in this case contended that "the State and City [having] the power of eminent domain over the park land involved . . . the City is therefore legally authorized to execute the voluntary conveyance enjoined." (360 S.W.2d 582, col. 1)

The court held that "a negative vote" of the people could not "vitiate the specific power granted by Art. 6674w–3."

The court said, "That statute authorizes the governing body of the city to make conveyance 'without any form of advertisement', and had the effect . . . of obviating necessity for an election . . . The power granted the State to condemn is not subject to consent of the electorate . . . and . . . the concomitant authority of the City to convey without being subjected to condemnation is not so restricted." (360 S.W.2d 583, col. 1)

The appellate court did hold that "Arts. 1017–1020 and 1112 . . . do not preclude the conveyance [by the city] enjoined here." (360 S.W.2d 582–3) In support of this holding the court relied on City of Tyler v. Smith County, 151 Tex. 80, 246 S.W.2d 601, 607 (1952), which did not involve these statutes, and the Kingsville case, in which, as we have pointed out, the statutes were not an issue.

The correctness of the result in San Antonio v. Congregation of the Sisters of Charity is found in the court's reliance on Article 6674w–3. Perhaps never before in the history of condemnation legislation in this state has the Legislature granted powers as broad as those given the State Highway Commission under Article 6674w (Acts 1957, 55th Leg., p. 724, ch. 300). Under this lengthy statute, any land, or any estate or interest in land, and any property rights of any kind or character, may be taken by the Highway Commission, including any lands owned by the State, if the Commission deems the taking necessary for the construction or operation of a highway. The only power denied the Commission is the power to condemn "property [which is] used and dedicated for cemetery purposes . . ."

Article 6674w–3(2), dealing with "State and Other Public Lands," provides:

"The governing body of every county, city, town, village, political subdivision or public agency is hereby authorized *without any form of advertisement* to make conveyance of title or rights and easements, owned by any such body, to any property needed by the State Highway Commission to effect its purposes in connection with the construction or operation of the State Highway System.

"Whether purchased or condemned by the State Highway Commission, the lands, property rights and materials which are purchased or condemned may also include those belonging to the public, whether under the jurisdiction of the State or any department or agency thereof, county, city, town, village, *including Home Rule Cities,* or other entity or subdivision thereof." (Emphasis supplied.)

The Act provided in Article 6674w–5 that the powers granted the Commission were "additional powers . . . to those existing" under the laws previously enacted, and that if other laws were in derogation of, or inconsistent with, powers granted by the Act, such other laws "shall be deemed to have been superseded by the provisions" of the Act.

Under this broad grant of power, the Legislature made clear its intent that earlier statutes should not be permitted to "hamper or limit the . . . Commission in the lawful execution of the powers and authority granted by this Act . . ." Under the same principle, charter provisions, which may not stand if inconsistent with general laws, were rendered ineffectual to "hamper or limit" the Commission in acquiring any land, except cemeteries, for any highway purpose deemed suitable by the Commission.

El Paso County v. City of El Paso, 357 S.W.2d 783 (Tex.Civ.App. El Paso 1962, no writ): In this lawsuit the conveyance upheld was by the county to the city. The court relied on Tyler v. Smith County, *supra,* and *Kingsville*, and stated, "These cases point out that one political subdivision having the power of eminent domain can condemn property belonging to another equally empowered subdivision, such as a county . . . [and that the Supreme Court in the Tyler case] held that the two political subdivisions did not have to resort to condemnation if they could agree otherwise." (357 S.W.2d 786, col. 2)

We do not agree with the broad rendering in that decision of the doctrine found in *Tyler* and *Kingsville*. The imprecise language in the El Paso case is characteristic of *dicta* found there and in other decisions since *Kingsville* and *Tyler* which may account for the efforts, as in this case, to enlarge a doctrine that is limited by the facts and issues found in the *Kingsville* decision. Moreover, the facts of the case before us are significantly distinguishable in several aspects from the facts of those cases and of the additional cases we have already reviewed.

The qualified voters of the City of Austin were parties to the original transaction forty years ago when the Zilker lands passed into the hands of the city to be used for public park purposes only. The electorate approved the plan as proposed by Zilker and authorized the payment of $200,000 for the land, the first $50,000 to be paid out of Parks and Playground Bonds, a fund created earlier by vote of the people. Zilker then conveyed the property to the school district, and its officials, in compliance with the Zilker stipulations, thereafter conveyed the land to the City of Austin by deed containing the restriction Zilker required that the land be used for park purposes only.

■ About twenty years thereafter, in 1953, the qualified voters of the City of Austin amended their charter and expressly denied the city council any power to "sell, convey, lease, mortgage, or otherwise alienate" any land dedicated for park purposes. The city council had no power, therefore, to accomplish alienation of the park land by agreeing to sell the land to the school district or by stipulating in court that the paramount use of the land was as a school site and not as a park. To enter into either agreement, the city council was required by the charter to obtain consent of the electorate obtained at a general or special election. This the council failed to do, and its acts were void and of no force or effect.

The school district argues that the power of the district to condemn is not subject to the whim of the voters. It cannot be said seriously that the people of Austin indulged in a whim when they voted to accept the Zilker proposal under which the school system itself benefited in the sum of $200,000, or that the people merely expressed a whim in 1953 when they amended their charter to require consent by majority vote of the electorate before the city council could sell or otherwise alienate the park lands received from the school system under the Zilker plan. We do not agree that the exercise of power reserved to the people is to be construed as a whim and is not to be honored by reason of whimsicality. We are more persuaded, as Jefferson was in writing, "I know no safe depository of the ultimate powers of society but the people themselves." (The Writings of Thomas Jefferson, 1905, Vol. X, xi)

■ In this case the city council appears to have proceeded on the mistaken theory that the council is the City of Austin. It is so well settled as not to require extensive citation of authority that the inhabitants of a home rule city constitute the city, and that the ultimate power of the city is vested in the qualified voters. It is from the people that the city council derives its authority. The power of the people is granted under the home rule amendment of the Constitution of Texas, and not even the Legislature may grant, amend, or deny a charter. When the people adopt a home rule charter, that instrument becomes the fundamental law of the municipality in the same manner that the Constitution is the fundamental law of the state. The only limitation upon these powers of the home rule city is that the charter may not be in conflict with general laws of the state or in contravention of the Constitution. Forwood v. City of Taylor, 147 Tex. 161, 214 S.W.2d 282, 286 (1948); Yellow Cab Transit Co. v. Tuck, 115 S.W.2d 455, 457 (Tex.Civ.App. Dallas 1938, writ ref.); City of El Paso v. Town of Ascarate, 209 S.W.2d 989, 994 (Tex.Civ.App. El Paso 1947, writ ref.); City of Fort Worth v.

Morrison, 164 S.W.2d 771 (Tex.Civ.App. Fort Worth 1942, writ ref.).

Limitations placed in the State Constitution are binding upon the Legislature (Williams v. McKnight, 402 S.W.2d 505, 508, Tex.Supp.1966), and in like manner limitations placed in the charter are binding on the city council of a home rule city.

We hold that the city council of the City of Austin, having failed to obtain consent of the people, did not have the power to enter into a contract with the trustees of the school district to convey the park land to the school district and that the council did not have power to stipulate in the condemnation proceedings that use of the land as a school site was paramount to its dedicated use for park purposes. This stipulation, if valid would relieve the condemnation court of the duty to determine the issue of paramount use. The result would be the giving of consent by the city council to alienation of the park land, an act the charter expressly denies the council power to perform.

We sustain appellants' first two points of error, the first being that the trial court erred in holding that Article 1019, V.A.T.S., and Article II, section 4, of the city charter are not a bar to the taking of the park land by the school district without consent of the electorate, and the second being the error in not holding that the city council was without power under the statute and the charter to convey the park land or to acquiesce in the taking by condemnation without consent of the people obtained at a general election or at a special election called for that purpose.

Appellants' third point of error is directed to the trial court's holding that the school district possessed power to take dedicated public park land in an eminent domain action.

The Austin Independent School District derives its power to condemn real property for school purposes from Section 23.31 of the Texas Education Code, V.T.C.A. (Acts 1969, 61st Leg., p. 2735, ch. 889). This section of the Code grants essentially the same power found under Article 1109c, which was in effect at the time Kingsville cases were decided. In the first *Kingsville* opinion, the court of civil appeals stated that under Article 1109c the school district had "the right of eminent domain to acquire the fee simple title to real property for school purposes." The court held that where the city and the school authorities determined that use of the park land for school purposes was necessary and that it was not practical or possible to use any other property, the park land could be taken for another public use and converted to a public school ground. (164 S.W.2d 50) When the case was before the court of civil appeals the second time, the court "adopted in full as a part of this opinion" the court's first opinion. (252 S.W.2d 1023) The Supreme Court refused the application for writ of error from the second decision.

It does not appear from either opinion that the power of the school district under Article 1109c was challenged or made an issue in the case. Appellants in this case urge that the Austin Independent School District has power under Section 23.31 of the Code only "to acquire the fee simple title to real property," and such grant may not be extended by implication to include public property and is limited to the taking of private property.

The rule is well established "that the power of eminent domain must be conferred by the Legislature, either expressly or by necessary implication, and will not be gathered from doubtful inferences. Statutes granting the same are strictly construed in favor of the landowner and against those corporations and arms of the State vested therewith." Coastal States Gas Producing Company v. Pate, 158 Tex. 171, 309 S.W.2d 828, 831 (1958).

The Supreme Court further held in that case that, "Strict construction is not, however, the exact converse of liberal

construction, for it does not require that the words of a statute be given the narrowest meaning of which they are susceptible. The language used the Legislature may be accorded a full meaning that will carry out its manifest purpose and intention in enacting the statute, but the operation of the law will then be confined to cases which plainly fall within its terms as well as its spirit and purpose." (309 S.W. 2d 831, col. 2)

The Legislature has expressly authorized home rule cities to condemn both private property and public property. Article 1175(15) grants to home rule cities "power to appropriate *private property for public purposes* whenever the governing authorities shall deem it necessary," and following an extensive enumeration of such public purposes, the Legislature added: "The power of eminent domain hereby conferred shall include the right of the governing authority, when so expressed, to take the fee in the lands so condemned and such power and authority shall include the right to *condemn public property for such purposes.*" (Emphasis added.)

The extensive and express authority of the Highway Commission under Article 6674w–3 to condemn public property, or any interest therein, has been pointed out and discussed earlier.

■ The Supreme Court in an early case established the principle that ". . . the law does not authorize the condemnation of property which has already been dedicated to a public use, when such condemnation would practically destroy the use to which it has been devoted." Sabine & E. T. Ry. Co. v. Gulf & I. Ry. Co., 92 Tex. 162, 46 S.W. 784, 786 (1898). In the absence of express authority, power to take such property cannot be implied from the general power conferred by law unless the necessity is so great as to make the new enterprise of paramount importance to the public. Fort Worth & R. G. Ry. Co. v. Southwestern Telegraph & Telephone Co., 96 Tex. 160, 71 S.W. 270,

273 (1903). In one case, in which the statute authorized the condemner to acquire a right of way "over any lands belonging to this state," the power was limited by the court to lands not already devoted to a particular use of government. Rockport & P.A.R. Co. v. State, 135 S.W. 263, 264 (Tex.Civ.App. Austin 1911, no writ).

■ We are of the view that the Austin Independent School District, granted the power to acquire the fee in real property for school purposes, did not have the power to condemn dedicated public park lands belonging to the people of the City of Austin. An independent school district is an arm of the state having limited purposes and powers, unlike home rule cities having multiple purposes, needs and powers, and has not been granted the broad powers accorded home rule cities to condemn both private and public property. The Highway Commission, an arm of the state with limited purposes, has been granted broad powers of condemnation, expressly including both private and public lands. The Legislature could have made a similar broad grant to school districts if it had been the legislative purpose to do so.

■ The determination made by the school district under Article 5421q that its proposed use of the park land as a school site "includes all reasonable planning to minimize harm" to the park is without support in the record and is contradicted by the undisputed evidence that the school project would destroy for park purposes nearly three-fourths of the 43.51-acre tract devoted to park use on the north bank of the Colorado River.

We hold that the school district did not have power under Section 23.31 of the Education Code to condemn park property owned by the people of the City of Austin. Further, we hold that the findings made by the school trustees under Article 5421q are contrary to undisputed facts and will not support the finding of the trial court that all requirements of Article 5321q "have been duly and lawfully met and fulfilled."

The judgment of the trial court is reversed, and judgment is rendered that the contract, by which the city council sought to sell the park land to the school district and to stipulate that paramount use of the park was as a school site, was void and ineffective to alienate the land, and that the school district was without authority to take the park land in an action to condemn.

Reversed and rendered.