Richard H. GODFREY, Jr., Appellee,

v.

The CITY OF OKLAHOMA CITY, a Municipal Corporation, Appellant.

No. 49218.

Supreme Court of Oklahoma.

Feb. 22, 1977.

Wilbert G. Smith, Smith, Smith & Vaughan, Oklahoma City, for appellee.

Walter M. Powell, Municipal Counselor, City of Oklahoma City, Jerry R. Fent, Asst. Municipal Counselor, Oklahoma City, for appellant.

DOOLIN, Justice.

This is an appeal in an inverse condemnation suit from an award in favor of Richard Godfrey against Department of Highways of the State of Oklahoma (State) and the City of Oklahoma City (City). The lawsuit was filed in 1972 by Godfrey alleging that in the process of constructing an access road to Interstate 240, a small corner of his property was taken without his consent, damaging his property and lessening its value. Commissioners were appointed and they returned their appraisal. At hearing the court found the defendants and each of them had taken a portion of Godfrey's property for which he was entitled to compensation. The court approved the commissioners' report, overruled City's motion to dismiss and ordered defendants to deposit into court the amount of commissioners' award of $13,750.00. Defendants requested jury trial. City's appeal to this court was dismissed as prematurely commenced while the cause was pending before the trial court for jury trial. Demands for jury trial were subsequently stricken and the final order approving award and setting fees, costs and expenses were issued. City only appeals, on the sole ground it is not a proper party to the condemnation suit, therefore the trial court erred in not sustaining its motion to dismiss and in requiring it to deposit the award into court. The record is silent as to action taken by Godfrey to require compliance of deposit.

Godfrey joined City as defendant because work causing the damages to his property was on a city street and because of an agreement executed in 1964 between City and State wherein, pursuant to 69 O.S.1961 § 46.4(1),[1] City agreed to pay to State "the total cost expended for right-of-way acquisition, utilities location and relocation assistance not paid by federal funds." This obligation was to be no less than 10% of the total cost or more than $40,000. Federal funds were available to pay the remaining 90%.

City submits it is not a proper party to the lawsuit because it did not do the taking and it had no employees, agents or contractors planning or constructing the project. It claims its sole connection with the project was that the taking took place within the

---

1. 69 O.S.1961 § 46.4(a): "For construction on the Interstate Highway System within the limits of cities and towns having a population of five thousand (5,000) or more, Federal aid funds, if available, may be used for the acquisition of rights-of-way, and shall, if available, be used to pay the cost of the removing or relocating of utility facilities located in either privately-owned or public rights-of-way, and in such event the city or town in which such construction is to be performed shall furnish funds to the State necessary to match said Federal funds."

city limits upon city right-of-way and it had agreed to pay costs of the project not paid by the federal government. City suggests that only the governmental entity responsible for the actual taking of a citizen's property should be the one obligated to compensate the damaged citizen.[2]

Other jurisdictions have authorized joinder of a municipality in an inverse condemnation suit where the city did not do the actual construction. For example in *Springer Transfer Co. v. Board of Commissioners of Bernalillo County,* 43 N.M. 444, 94 P.2d 977 (1939), the property owner was permitted to sue both the county commissioners and the City of Albuquerque for consequential damages sustained in the construction of a subway on the theory commissioners were liable under state constitutional provision regarding damaging of private property and the city was liable under a *contract with the state.* The court in *Clark v. State,* 324 S.W.2d 75 (Tex.Civ.App. 1959) affirmed at *State v. Clark,* 161 Tex. 10, 336 S.W.2d 612 (1960), allowed the state to implead the city in an inverse condemnation suit because of a *contract of indemnity that existed between the state and the city involved.* In *Postlethweighte v. Towery,* 258 Ky. 468, 80 S.W.2d 541 (1935) affirmed at 264 Ky. 606, 95 S.W.2d 233 (1936) a Kentucky statute required the county to pay for the right-of-way acquired by the state. The court held because the county was liable for cost of the right-of-way, it was a necessary party to a property owner's suit for compensation. In *Wilson v. City of Fargo,* 141 N.W.2d 727 (N.D.1965) the city acquired the right-of-way for construction of a dyke by the federal government. The city was held liable for the consequential damages resulting to the property owner's land.

Although this court has not spoken to the precise issue here involved, we have held a

city may be liable for damages to property owner where it condemned the property but did not participate in the actual taking. In *State ex rel. City of Ardmore v. Winters,* 195 Okl. 243, 156 P.2d 798 (1945) the city condemned the property and then leased it to the United States for use as an airport. This court held the city was liable for the value of the land damaged even though it did not participate in the actual taking and construction of the airport.

The State is also a proper party to this suit even though it is not the ultimate source of the award. Because the City is responsible by virtue of the contract for payment of the award and because it approved the construction and modification of one of its streets, it is not improper for Godfrey to join City as party defendant and for court to require City to deposit the award into court.

AFFIRMED.

LAVENDER, V. C. J., and DAVISON, WILLIAMS, BERRY, BARNES and SIMMS, JJ., concur.

IRWIN, J., dissents.

---

**2.** City cites no Oklahoma cases to this effect but refers us to the 29A C.J.S. Eminent Domain § 195 (1965) and the cases cited therein. This section states: "The political entity or public agency or corporation causing the land to be condemned or the work to be done is primarily

liable for injuries caused by the exercise of the power of eminent domain, although the work or taking is actually done by another and this applies to property taken or injured by a county, city, or other political subdivision." But cf. 30 C.J.S. Eminent Domain §§ 393, 417b (1965).