EL PASO COUNTY, Appellant,

v.

The CITY OF EL PASO, Appellee.

No. 5568.

Court of Civil Appeals of Texas.

El Paso.

May 16, 1962.

Jack Fant, County Atty., Edward C. Hughes, Asst. County Atty., El Paso, for appellant.

784

Travis White, City Atty., Robert J. Galvan, Asst. City Atty., John C. Ross, Jr. Asst. City Atty., El Paso, for appellee.

FRASER, Justice.

This is a suit by the City of El Paso against El Paso County for declaratory judgment seeking to determine if a transfer of title to 1.6737 acres of land, from the County to the City, is valid and effective. Trial was to the court and judgment rendered for the City.

The actual transfer was from the County back to the Federal government, the original grantor, and the government then deeded the land in question to the City of El Paso. The situation arose by virtue of the City's alleged need for more facilities and a site for the construction of a school for the training of City firemen and the operation of a water tower. Initial negotiations contemplated a lease from the County to the City, but because the land involved was a part of a parcel of land deeded to the County by the United States, and because the deed contained a restrictive covenant to the effect that it should be used for park purposes only, it was deemed inadvisable to attempt the execution of a lease. The record shows that both parties were willing to execute said lease, but legal authorities determined that such was not practicable. Thereafter, the County Commissioners of El Paso County, subsequent to an agreement between the City and the United States authorities, passed an order ordering the parcel involved to be re-conveyed to the United States government, so such government could in turn deed it over to the City of El Paso for the purposes of erecting a training tower for firemen, and the order recites it will reduce the fire insurance rate in El Paso. Pursuant to said order of January 11, 1960, the County Judge did, on behalf of the County, execute a special warranty deed, dated January 13, 1960, conveying this parcel from the County to the United States of America. Then the United States Commissioner, on behalf of the United States government did, on January 15, 1960, deed the aforesaid parcel to the City of El Paso; whereupon the City had plans and specifications drawn and made preparations to construct said fire station and training tower.

After all this had been done, the County attempted to repudiate the transaction, stating that it had been importuned by some tax payers and park users so to do. The tract in question lies along and abuts on Ascarate Lake, which is part of a County-maintained park. Hence this law-suit.

The County-defendant has filed six points of error, which are discussed together, alleging generally that the County's act in deeding this land to the Federal government for conveyance to the City was ultra vires, i. e., without authority, because the County Judge did not have adequate or sufficient authority from the Commissioners' Court; that there is no evidence that the County had abandoned this parcel or the tract of which it was a parcel; that the County Judge did not comply with Article 1577, Vernon's Ann.Tex.Civ.St., which provides for sale of County land at public auction; that the County and the County Judge were without authority to either convey this land or agree to do so in the manner they did, and that the plaintiff's petition failed to allege that any resolution granting such authority or attesting to any agreement was ever passed by the Commissioners' Court, and that the Commissioners' Court never authorized the County Judge to act as its agent to execute any agreement. Defendant alleges that there was never any attempted condemnation by the City and never any abandonment of the tract by the County. The defendant County seems to rely pretty heavily on the position that the statutes relative to the conveyance or disposal of County land were not followed in this particular instance, and their well-prepared and well-argued brief points out that the County can convey its property only by strict adherence to the statutes appertaining thereto.

■ This case was tried to the court without a jury, and there are no findings of fact in the record. Therefore, it must be presumed that the trial court found all disputed fact issues in favor of the plaintiff or petitioner. Therefore, we will not discuss hereinafter whether or not the City needed the site, whether or not it was of paramount importance, and whether or not the City had made adequate investigation and findings as to the necessity of the site being located on this particular parcel; and we will proceed on the theory that such fact issues favorable to the petitioner's position must be considered as found in favor of the winning party in a case like this, where there is no request for findings of fact in a case tried by the court without a jury, and there being evidence to support same.

■ Ordinarily there could be no doubt that the County, like any other political subdivision of the State, could dispose of its real estate only in strict adherence to the pertinent statutes. Here, however, the City has cited two cases that appear to be an exception to this rule. These cases are City of Tyler v. Smith County, 151 Tex. 80, 246 S.W.2d 601 (S.Ct.), and Kingsville Ind. School Dist. v. Crenshaw, Tex.Civ.App., 164 S.W.2d 49 (dis'm. cor. judg.). In the Tyler case it appears that there was a large public square in the city which was owned by the county, bounded by four city streets, with a county courthouse in the center of said square. The rest of the area (square) had been used and devoted to public uses for over a century, having been used as a market place, for meetings, etc., and at the time of the lawsuit had been beautified and was being maintained by the county as a courthouse lawn and, as the court said, used by the public as a "place of enjoyment and rest * * * to enjoy the roses, shrubbery and various landscaping that has been put there." The County had in mind moving the courthouse and then selling the square for private use. The city wished to run a 90-foot street through the square in order to connect two parts of a thoroughfare called Broadway, which thoroughfare was broken by the square. There was objection and an eventual lawsuit. The Supreme Court held that the county owned the property in fee simple, with the city having no rights in the square except its street easements along the sides, and while the county had the right to remove the courthouse, the entire square was impressed with a public use and therefore could not be diverted to private use or sold to private agencies or persons. On motion for rehearing, parties asked the court if its opinion meant that the city could never connect its highway by running a street through the square. The court answered pointing out that such was not the meaning of its original opinion, but that the City of Tyler (like El Paso), being a home-rule city, had the right of condemnation, and in that right was contained the right to condemn *public* as well as private property. We should like to mention, in passing, that such right has long been recognized, to-wit, one political subdivision (having power of eminent domain) can condemn the land of another, the decision resting, of course, on the paramount use and the best interests of the public. The Supreme Court then went on to say:

> "If counsel will refer to Kingsville Independent School District v. Crenshaw, Tex.Civ.App., 164 S.W.2d 49, (error dismissed, cor. judgt.) they will find how the desired result may be accomplished even without resort to condemnation proceedings."

It will immediately be obvious that these last six or so words are very important, because it is a direct statement by the Supreme Court of Texas that the transfer of land from one political subdivision to another can be accomplished without resorting to condemnation. We now examine the Kingsville case and find that the situation here was as follows: Some years back, an area known as Chamberlain Park had been conveyed to the City with the following restriction: "Upon condition that the land shall be used as a public park for the pleasure and benefit of the people of the town of Kingsville and shall be maintained as such

by the City, and that no buildings shall be erected thereon with the exception of a bandstand for free musical concerts, and that upon violation thereof the title shall revert." The Kingsville Independent School District wanted this park for a school site. After certain negotiation, the city conveyed the park to the school district, the owner of the reversionary interest having waived its rights. This transfer was contested by people who owned property along the park; they alleged that the park had been continually used by pedestrians crossing it. In this case the court of civil appeals, after pointing out that the school district had the power of eminent domain or condemnation, mentioned that the *appellees* asserted that this park, having already been devoted to public use, could not be taken for another public use unless it was impossible to exercise the new public use by any other means. The court then said:

"In view of the fact that this park is shown to be by far the most satisfactory ground upon which to build the new school buildings, and that great inconvenience would arise if they were built elsewhere, the requirements of the law in this respect are fully met."

(We believe the same situation exists here, as there is evidence by City and fire department officials that this parcel is the only usable or practical property site available for this particular purpose and the planned installations, and that such are necessary for development of the fire department and reduction of fire rates. There is evidence to support these facts and we must assume that they were found favorable to appellee by the very nature of the judgment rendered by the trial court.) The court further said:

"The School Board, vested by law with the power to act for the public school interest, has determined that the Chamberlain Park property was necessary and that it was not practical or possible (within the meaning of such terms by the courts), to use any other

property. The City, acting through its Mayor and Commissioners, has decided that the Park would be serving a better public use if abandoned as a park and converted to school purposes. Under such circumstances there is no occasion to litigate the question as to the paramount public use of the property. * * * Applying the same rule here, if the City and the School District can agree upon the paramount public use of the property, why should they be compelled to institute condemnation proceedings?"

These cases point out that one political subdivision having the power of eminent domain can condemn property belonging to another equally empowered subdivision, such as a county. The Supreme Court's written opinion on motion for rehearing holds that condemnation is not essential or necessary, citing the Kingsville case, which case specifically held that the parties having condemnation rights could take each other's property by proving a paramount use of the proposed property; but, more important, further held that the two political subdivisions did not have to resort to condemnation if they could agree otherwise. In neither opinion does the Supreme Court or the court of civil appeals mention or refer to the necessity of complying with Article 1577 or Article 6078a of the Texas statutes. We think this is probably true because Article 1577, requiring the county to sell its property at public auction, apparently did not—in the opinion of the Supreme Court—apply to the proposed sale or transfer to another political subdivision that would use the property for public use or benefit. It is difficult to comprehend why either the Legislature, through Article 1577, or any court, would require the county to sell land at public auction when such land is impressed with a public use or trust. Who would buy it? It is difficult to imagine why any private agency would want land impressed with a public trust or use; and in any event the Supreme Court held in the Tyler case that because the land *was* impressed with a

public use, it could not be sold to private persons or diverted to private use. So why require a public auction? Also, the Supreme Court apparently does not consider it necessary that the property be abandoned and Article 6078a complied with under the circumstances present in the Tyler and Kingsville cases. In the case before us the land was deeded for public use, to-wit, park purposes. This was in 1937, and after a park tax election the tract has, for many years, been used by the public for fishing, boating, picknicking and general recreation. So we have land restricted to public use by deed and used by the public for many years, and so impressed with a public use.

We believe these cases and the language of the Supreme Court therein control the present situation. We have here land owned in fee by the County and restricted to public use and used by the public; such land being desired by a home rule City for public use different from its former public use; we have a city with the power of eminent domain and condemnation, and in neither the case here present nor the Tyler case had the property been abandoned (as evidenced by the language of the Tyler decision, pointing out that the property was cultivated and beautified for the pleasure of the using public), and the facts here present showing this tract to be in use. Article 1577 requires the appointment of a commissioner to sell county land at public auction, but it is obvious that this statute could not be complied with in either the Tyler case or this case, because the land was impressed with a trust and public use, and could not otherwise be employed; and this is likely one of the reasons why the Supreme Court did not mention this article or suggest that it had to be complied with. This article was in effect at the time the Tyler and Kingsville opinions were written, and for a long time prior thereto. It must be remembered that the Kingsville case, where the court said the result could be accomplished by agreement, was approved by the refusal of a writ, and then later specifically and directly referred to and given judicial adoption by the Court's language in the Tyler case. We feel that these cases are controlling because of the factual background in the matter before us.

Defendant-appellant has thoroughly briefed and discussed the case of Zachry v. City of San Antonio, 157 Tex. 551, 305 S.W.2d 558, and calls our attention to the fact that this case by the Texas Supreme Court does not discuss or rely on the Tyler or Kingsville cases. However, this was a case of the City of San Antonio attempting to lease part of the subsoil of one of its parks to a *private individual*. For that reason we do not believe the Zachry case to be in point.

■ We think the statutes hereinabove referred to do apply wherever a political subdivision, subject to such statutes, desires to dispose of any of its public land to an individual or private agency, but not where such political subdivision with the power of eminent domain and condemnation chooses to deal with its opposite number and reach an agreement as to the change of public use, rather than to resort to the expensive and tedious medium of litigating the entire matter through the courts, thereby holding up the public benefit and depleting to some extent the tax funds of the subdivisions involved.

■ We do not find, as defendant alleges in his brief, that it is necessary to either institute or threaten condemnation proceedings, nor can we see any reason for such. In the case before us, the record shows that various City officials presented pertinent information to the County, and, as a result, the County Commissioners prepared an order ordering the County Judge to convey the land to the Federal government so it could be in turn conveyed to the City. We think this is agreement enough to satisfy the language and holdings of the Tyler and Kingsville cases. The City, according to the record, certainly wanted the parcel, and further stated, both to the Commissioners' Court and in the present lawsuit, why they

wanted it and why this was the only good available site. The County Commissioners apparently agreed with and believed their representations, because they first passed a unanimous resolution to lease, and then passed the unanimous order to deed. We think these elements, along with the other negotiations, comprised an agreement as indicated in the Kingsville case and referred to in the Tyler case, and we do not think defendant's objections thereto have sufficient merit to require reversal of the trial court's decision. We find no requirement anywhere in these two cited cases providing a definite format for a transaction such as this, but we do believe in the case before us that substantial compliance with the provisions and holdings of these cases has been accomplished. Defendant maintains, but we cannot agree, that condemnation *must* have either been begun or threatened. We think that the Supreme Court in the Tyler case, by referring definitely to the Kingsville case, said in plain and unmistakable terms—You can trade land or convey land without having to condemn or threaten to condemn—the important thing being that the agencies involved have the authority to condemn, and not that they have begun or threatened to begin condemnation; and certainly it has always been the object of deliberate jurisprudence to make it possible, whenever advisable, for parties to avoid litigation.

Nor do we find sufficient authority for the defendant's statement that the property had to be abandoned. In the Tyler and Kingsville cases neither tract had been abandoned. In the Tyler case it had been converted to grass, shrubs and flowers, and in the Kingsville case the court itself said: "The City for a number of years maintained the property by planting grass[, lawn] thereon and shrubs and preserved the trees thereon. * * *" There was no evidence of abandonment of the courthouse square in the Tyler case, and it is the Tyler case that was decided by the Supreme Court, and in which the Supreme Court definitely referred to the method enunciated in the Kingsville case. Appellee here points out, too, that if it was necessary to resort to Article 6078a—to-wit, abandon the park—it would be impossible to convert a park use to some other use because, having abandoned it as a park, there would no longer be any park.

We again discuss, briefly, the argument of defendant that there was no "agreement" in the matter before us. It will be noted in the Kingsville case that the language of the court points out that the *negotiations* resulted in the City of Kingsville conveying the park to the School District. That seems to be on all fours with the situation here present. The court further said: "Thus the necessity for condemnation proceedings was averted, as all had been accomplished by agreement (i. e., voluntary conveyance) that could have been accomplished by a condemnation proceedings." (Parentheses ours). Also, "Applying the same rule here, if the City and the School District can agree upon the paramount public use of the property, why should they be compelled to institute condemnation proceedings?" We think, here, that the evidence is clear that the City and the County originally agreed on this transaction, as evidenced by the Commissioners' order and the Judge's deed, in response to the City's request for same, and that such agreement resulted in the conveyance by the County to the Federal government with the understanding that the Federal government would re-convey without restriction to the City. There is no dispute as to the benefits to the County as well as to the City from reduced fire rates; but in any event this is only a part of the general picture which indicates that the County was convinced that it was to the best interests of the public to convey this small tract of land to the City. The County had originally received over 352 acres in this tract from the Federal government and, as the record shows, was apparently willing to cooperate in every way and go forward with the steps necessary to enable the City to bring its fire department up to date at the time the deeds

were made, and it was not until a year later that the County determined to attempt to repudiate its transaction. The appellee points out that the record is rather deficient as to why the County decided to repudiate this transaction, and alleges in its brief that there are two affidavits (from citizens) dated long after the County determined to repudiate, and appellee urges that there is nothing to show that any complaints were made before the County so acted, or had anything to do with such repudiation. Nor is there any allegation or evidence that the County was misled, deceived, or defrauded. We believe the record, generally, substantiates this assertion.

 Appellee states that the County waited a year before it attempted to repudiate the transaction, during which time the City went forward with its plans, paying out money and incurring obligations. The City urges that such estops the County from now challenging any irregularities, and cites authority to that effect, to-wit, 20 C.J.S. Counties § 1197; Boydston v. Rockwall County, 86 Tex. 234, 24 S.W. 272, etc. We are inclined to think this point is probably well taken; that, while estoppel cannot be used to create a new power or enlarge one already in existence, it may be employed to defend against mere irregularities in the doing of thing in controversy where the power was present to do so.

In conclusion, we are convinced that the Supreme Court meant just what it said in the Tyler case and in its written opinion on the motion for rehearing, where it adopted and absorbed the Kingsville case. This being true, such is a clear enunciation by the highest court of our state that the thing done here can be legally done. We do not find any material variance between this and the Kingsville or Tyler situations, as they both seem substantially similar to the matter now before the court. Therefore we believe the Tyler case is a clear enunciation and mandate of the method available in this type of situation. We further believe that not only are the necessary facts supported

by evidence, but they have, by inference, been found by the trial court favorable to his judgment. We also believe that substantial compliance with the doctrine, law and method of the Tyler and Kingsville cases is here present, as evidenced by what we believe to be a definite, deliberate, contemplated and executed agreement between the City and the County, resulting in the conveyances above described. We therefore hold that the transaction was not ultra vires, but was, as the trial court held, after negotiation legally consummated.

Appellant's points are accordingly overruled, and the judgment of the trial court affirmed.