

# THE ATTORNEY GENERAL
## OF TEXAS

**JOHN L. HILL**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

August 30, 1973

The Honorable J. W. Edgar
Commissioner of Education
Texas Education Agency
201 East Eleventh Street
Austin, Texas 78701

Opinion No. H- 93

Re:     May the El Campo school
district pursuant to an
agreement with the City
of El Campo, transfer
title to school-owned
surplus land, by nego-
tiation for the consider-
ation of improvements
and usage -- without the
necessity of a cash con-
sideration offered at a

Dear Dr. Edgar:                                    public bidding?

        Your request for an opinion of this office asks whether the El Campo
School District may transfer title to 30 acres of surplus land to the City of
El Campo without the necessity of competitive bids and without cash consi-
deration. You state that the School District desires to convey the land in
exchange for the City's promise to make $60,000 in recreational improve-
ments to the land which students of the District may use at all times. The
City is anxious to obtain the land and develop it as a part of its master
park system in El Campo. You state that the agreement, if within the
district's authority, will be of benefit to the school and the community.

        Trustees of the El Campo Independent School District are generally
vested with wide powers of management and control of real and personal
property of the district. Section 23.26 Texas Education Code. Subsection
(c) of that section states that:

                "All rights and title to the school property of
        the district, whether real or personal, shall be vested
        in the trustees and their successors in office. "

Of course, as local public corporations, independent school districts through their boards of trustees may only exercise powers expressly or impliedly granted to them by the Legislature. Love v. City of Dallas, 40 S. W. 2d 20 (Tex. 1931); Foster v. City of Waco, 255 S. W. 1104 (Tex. 1923). No school district may make a contract that is not expressly authorized by law or necessarily implied from powers expressly granted. McCorkel v. District Trustees, 121 S. W. 2d 1048 (Tex. Civ. App., Eastland, 1938, no writ).

Among the powers the Legislature has expressly granted to independent school districts are the exclusive management and control of the schools of the district [§ 23. 26(b), Texas Education Code], including the power to sell any property of the district. Sections 23.29, 23.30, Texas Education Code. The contractual rights to be obtained here constitute "more convenient and more desirable school property" within the meaning of § 23, 30(c), in our opinion.

The board of trustees may also contract to improve or acquire gymnasia, stadia, or other recreational facilities (§ 20. 21, Texas Education Code), or may, by agreement establish, provide, maintain, construct and operate jointly with another governmental unit. . . playgrounds, recreation centers, athletic fields, swimming pools, and other parks and recreational facilities located on property now owned or subsequently acquired by either of the governmental units. Article 608lt, V. T. C. S. The courts will not interfere with the exercise of the board's authority unless a clear abuse of power and discretion is made to appear. Kissick v. Garland Independent School District, 330 S. W. 2d 708 (Tex. Civ. App., Dallas, 1959, err. ref.).

In our opinion, the El Campo Independent School District may enter into an agreement with the City of El Campo whereby the District obtains the right to require the construction of and to use recreational facilities to be constructed by the city to the district's specifications, in consideration of the district's transferring title to the land to the city for use as a public park. Compare Attorney General Opinion M-1195 (1972). Section 20.50, Texas Education Code, would limit the contract period to 75 years, but Article 608lt authorizes similar contracts between governmental units for indefinite periods of time. Since the Education Code states the board of trustees of an independent school district shall have the powers and duties

described in the Code, in addition to any other powers and duties granted or imposed by law(§ 23. 25), the contract may be for an indefinite period pursuant to the provisions of Article 608lt.

No violation of Article 3 § 52 of the Constitution is involved because there is a quid pro quo.  Neither governmental unit is making a grant or a loan of its credit to the other.  See San Antonio River Authority v. Shepperd, 299 S. W. 2d 920 (Tex. 1957).

You also ask if the school district must accept competitive bids on the sale of the land or the contract for the construction and use of recreational facilities to be used by the district.

> "All contracts proposed to be made by any
> Texas public school board for the construction,
> maintenance, repair or renovation of any building
> . . . shall be submitted to competitive bidding
> when said contracts involve $1, 000 or more."
> Section 21. 901(b) Texas Education Code.

Similarly, the Legislature has generally required that:

> "No land owned by a political subdivision of
> the State of Texas may be sold or exchanged for
> other land without first publishing in a newspaper
> of general circulation in the county where the land
> is located . . . a notice that the land is to be
> offered for sale or exchange to the general public,
> its description, its location and the procedures
> under which sealed bids to purchase the land or
> offers to trade for the land may be submitted."
> Article 5421c-12, V. T. C. S., as amended in H. B.
> 40, 63rd Leg., 1973.

Articles 5421q and 1019, V. T. C. S., require special procedures before land designated or utilized as a public park, recreation area, etc., may be disposed of by a political subdivision of the state, and are not applicable to the situation you present since the "surplus land" you wish

to convey has not (to our knowledge) been designated for any of the special purposes to which those articles apply.

In our opinion, state law does not require competitive bidding in your situation.  Although the transaction may fairly be characterized as a "sale" of land or as a contract exceeding $1,000 for the construction of facilities used by the District, it is most reasonably characterized as an agreement reached between two political subdivisions, each having the power of eminent domain and condemnation, respecting the paramount public use of land owned by one of them.  The contract for the construction of facilities by the city for the district's use is only incidental to and consideration for the transfer of land to the city for the paramount public purpose of providing adequate park facilities to city residents.

The Legislature has expressly authorized home rule cities to condemn both private and public property.  Article 1175(15), V. T. C. S., grants to home rule cities:

> "power to appropriate private property for public
> purposes whenever the governing authorities deem
> it necessary . . . .  The power of eminent domain
> hereby conferred shall include the right . . . to
> condemn public property for such purposes."
> (emphasis added)

Our courts have held that political subdivisions having the power of eminent domain and condemnation may avoid those expensive proceedings when they agree among themselves as to the paramount public use of land owned by one of them.  Kingsville Independent School Dist. v. Crenshaw, 164 S. W. 2d 49 (Tex. Civ. App., San Antonio, 1942, err. ref.); El Paso County v. City of El Paso, 357 S. W. 2d 783 (Tex. Civ. App., El Paso, 1962, no writ); City of Tyler v. Smith County, 246 S. W. 2d 601, (Tex. 1952).

The court in El Paso County v. City of El Paso, supra., noting that Articles 1577 and 6078a set out notice and competitive bidding procedures for the sale of county land, said:

"We think the statutes herein referred to do apply wherever a political subdivision, subject to such statutes, desires to dispose of any of its public land to an individual or private agency, but not where such political subdivision with power of eminent domain and condemnation chooses to deal with its opposite number and reach an agreement as to the change of public use, rather than to resort to the expensive and tedious medium of litigating the entire matter through the courts. . . ." (357 S. W. 2d at 787)

We believe the statutes requiring competitive bidding procedures when land is sold by a political subdivision of the state do not apply to a situation in which one political subdivision is negotiating with another about the paramount public use of public land in an effort to avoid condemnation proceedings.

It is therefore our opinion that the agreement you wish to enter into with the City of El Campo is within the permissible contractual powers of the school district and may be completed without the necessity of competitive bids and without cash consideration.

## SUMMARY

An independent school district is vested with the power of contracting with a city for construction and use of recreational facilities to be used by the district and in exchange therefor may convey title to surplus school land to the city if both agree that the paramount public use of the land would be its use as a public park for the benefit of all the residents.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APRROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee