LA VILLA INDEPENDENT SCHOOL
DISTRICT, Appellant,

v.

GOMEZ GARZA DESIGN,
INC., Appellee.

No. 13–00–782–CV.

Court of Appeals of Texas,
Corpus Christi.

May 30, 2002.

Rehearing Overruled June 27, 2002.

Jose R. Guerrero, Montalvo & Ramirez, McAllen, for Appellant.

Luis R. Hernandez, Tom Fleming, Fleming & Hernandez, Brownsville, for Appellee.

Before Justices DORSEY, YAÑEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice RODRIGUEZ.

Appellant, La Villa Independent School District, (La Villa) brings this appeal following a final judgment in favor of appellee, Gomez Garza Design, Inc., (Garza Design) for breach of contract. We affirm.

### I. Facts

On May 24, 1995, La Villa's board of trustees held a meeting wherein it gave Garza Design authorization to develop architectural plans for a new elementary school. A few days later, Garza Design's president, Rudolph Gomez, presented La Villa's superintendent, Eduardo Gonzalez, with a contract which described the project as "Design of New Elementary." Gonzalez signed the contract and Garza Design proceeded to design several options for La Villa. Garza Design presented the options to La Villa. One of the design options was Phase I of the Elementary–Middle School project (Phase I project), which consisted of additions to the middle school building and remodeling work to the elementary school building. On September 6, 1995, La Villa's board of trustees granted authorization for Garza Design to proceed with the preparation of the Phase I project. The project was completed by October,1996, and Garza Design was paid for its design work.

In 1997, La Villa's new superintendent, Bonifacio Moron, directed Garza Design to begin preliminary design work for a new elementary school and improvements to the high school under the contract signed by Gonzalez in 1995. After a bond issue was passed, Garza Design presented its design work on the new elementary school to La Villa's board of trustees. No action was taken by La Villa on Garza Design's presentation. Garza Design later learned La Villa had hired a different company to design its plans for the elementary school. Garza Design sent a demand letter to La Villa for payment of $61,625.71 for the design work of the new elementary school. Garza Design also demanded the claim be submitted to arbitration, as set forth under the terms of the 1995 contract. La Villa filed a petition for declaratory judgment asking the trial court to find the 1995 contract had been fully performed and to find Garza Design was not under any contract with La Villa for the design of the new school. The trial court enjoined the arbitration proceedings and Garza Design filed a counterclaim against La Villa for breach of contract. Following a jury trial,

the trial court entered judgment in favor of Garza Design. This appeal ensued.

## II. Analysis

In issues one and three, La Villa contends the trial court erred in denying its motion for judgment notwithstanding the verdict and to disregard jury findings because the evidence was legally insufficient to support the jury's affirmative answer to question number one.[1]

### A. Law

Texas Rule of Civil Procedure 301 provides a court may render judgment *non obstante verdicto* (JNOV) if a directed verdict would have been proper and may disregard any jury finding on a question that has no support in the evidence. *See* TEX.R. CIV. P. 301. A motion for JNOV should be granted when the evidence is conclusive and one party is entitled to judgment as a matter of law. *See Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227–28 (Tex.1990); *Taco Cabana, Inc. v. Exxon Corp.*, 5 S.W.3d 773, 777 (Tex.App.-San Antonio 1999, pet. denied). We review the denial of a motion for JNOV under a legal sufficiency or no evidence standard of review. *Trinity Indus. v. Ashland, Inc.*, 53 S.W.3d 852, 863 (Tex. App.-Austin 2001, pet. denied); *Kahlig v. Boyd*, 980 S.W.2d 685, 688 (Tex.App.-San Antonio 1998, pet. denied). That is, we review the record in the light most favorable to the jury's findings, considering only the evidence and inferences that support them and disregarding all evidence and inferences to the contrary. *Trinity In-*

*dus.*, 53 S.W.3d at 863; *see Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001); *Wal–Mart Stores, Inc. v. Bolado*, 54 S.W.3d 837, 841 (Tex.App.-Corpus Christi 2001, no pet.). If there is more than a scintilla of evidence to support the findings, the motion for JNOV was properly denied. *See Mancorp, Inc.*, 802 S.W.2d at 228; *Trinity Indus.*, 53 S.W.3d at 863. The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Bolado*, 54 S.W.3d at 841.

### B. Existence of Contract

La Villa first argues Garza Design did not prove the existence of a legally binding contract because Garza Design failed to offer minutes of a meeting showing La Villa authorized the contract. La Villa relies on *Wagner v. Porter*, 56 S.W. 560, 561 (Tex.Civ.App.1900), wherein the court held the acts of municipal corporations may only be shown by the minutes of the meetings of their council. *Id.*[2] La Villa argues that because a school board is a governing body, there must be evidence the school board affirmatively acted to approve or ratify the contract. This evidence, it argues, may only be reflected in the authenticated minutes of the school board meeting. *See Wagner*, 56 S.W. at 561; *City of Bonham v. Southwest Sanitation, Inc.*, 871 S.W.2d 765, 767 (Tex.App.-Texarkana 1994, writ denied).

The record reflects Garza Design offered minutes from the school board meet-

---

1. The jury answered affirmatively to the following question: "Do you find that the Board of Trustees of the La Villa Independent School District on May 24, 1995 delegated to Superintendent Eduardo Gonzalez the function of signing the agreement dated May 26, 1995 with Gomez Garza Design, Inc.?"

2. *See, cf. New Caney Indep. Sch. Dist. v. Burnham*, 960 S.W.2d 957, 958 (Tex.App.-Texarkana 1998, pet. denied) (school districts are local public corporations that have the same general character as municipal corporations) (citing *Love v. City of Dallas*, 120 Tex. 351, 40 S.W.2d 20, 26 (1931)).

ing held on May 24, 1995, into evidence. The relevant portions of the meeting state:

A discussion was held for Gomez Garza Design Inc. to proceed with architectural plans for new elementary school campus.

After the discussion, Mr. Salazar moved and Mrs. Ramos seconded to authorize Gomez Garza Design Inc. to proceed with architectural plans for new elementary school campus and to provide several options.

Mr. Garza called for discussion. He called for a vote. All voted in favor. The motion carried.

We find these minutes constitute sufficient evidence to reflect that the school board authorized a contract for the design of a new elementary school.

### C. Authority of Superintendent

■ La Villa further contends that even if we find the minutes reflect authorization of a contract between La Villa and Garza Design, there is insufficient evidence to prove La Villa's superintendent had authority to bind La Villa to the contract. Garza Design counters that La Villa is estopped from making this argument.

■ La Villa cites a number of cases for the proposition that the superintendent's act of signing the contract was not binding on La Villa because there is no evidence the superintendent had express authority to do so. In *City of Floydada v. Gilliam*, 111 S.W.2d 761 (Tex.Civ.App.-Amarillo 1937, no writ), the court held governing authorities of cities and other representative bodies may express themselves and bind the institution which they represent only by acting together in a meeting duly assembled. *Id.* at 764; *see City of Bonham*, 871 S.W.2d at 767–68 (city not bound to addendum to contract when minutes of meeting at which contract was approved did not reflect approval of addendum);

*Stirman v. City of Tyler*, 443 S.W.2d 354, 358 (Tex.Civ.App.-Tyler 1969, writ ref'd n.r.e.) (governing authorities of cities are authorized to delegate to others the right to perform acts and duties necessary to the transaction of the city, but can do so only upon resolution or ordinance by a majority vote). However, estoppel may apply against a subdivision of government, such as a school district. *See Bowman v. Lumberton Indep. Sch. Dist.*, 801 S.W.2d 883, 888 (Tex.1990).

■ "While estoppel cannot be used to create a new power or enlarge one already in existence, it may be employed to defend against mere irregularities in the doing of a thing in controversy where the power was present to do so." *Id.* at 889 (citing *El Paso County v. City of El Paso*, 357 S.W.2d 783, 789 (Tex.Civ.App.-El Paso 1962, no writ)). Where the governing body is a board, as in this case, and if the evidence clearly indicates that the subordinate officer's act was done with the knowledge of the school board, and was so closely related to the expressed will of the school board as to constitute an act of the board itself, the school board is estopped from claiming the superintendent did not have authorization to sign the contract. *See id.* at 888.

In this case, it is undisputed that the school board had the power to authorize, approve, and sign the contract between the parties by proper action. Furthermore, there is ample evidence that the action of Superintendent Gonzalez, who actually signed this contract on behalf of the school board, was with the knowledge and implicit approval of the board. *See id.* For instance, Gonzalez testified that he had never taken contracts to the board for approval prior to signing the contracts. He stated that once the board gave him directions, he had authority to proceed.

Gonzalez further testified that, as the school's agent, he entered into two other contracts with La Villa without submitting them to the board, and that Garza Design was paid for the services rendered under those contracts.

Moreover, testimony by two past superintendents of the La Villa school board provided evidence that they had authority to sign approved contracts and bind La Villa without first having to submit the contract to the board. Superintendent Moron, who was superintendent subsequent to Gonzalez, testified that he had authority to sign all contracts approved by the board without first submitting them to the board. Superintendent Salazar, who preceded Gonzalez as superintendent, and who later served as a school board member, testified he signed contracts once approval was given, without first submitting them to the board. Salazar further testified that, during the May 24, 1995 meeting, his motion to authorize Garza Design to prepare certain documents was intended to authorize Superintendent Gonzalez to sign a contract with La Villa. The school board indicated its intention, as stated in the minutes and testimony, to adopt the contract between La Villa and Garza Design. *See id.* Therefore, the superintendent did not need the express approval of the entire board to bind the board, and the board is estopped from arguing that the action of the superintendent was not authorized. *See id.*

Looking at the record in the light most favorable to the jury's findings, we conclude there is more than a scintilla of evidence to support the affirmative answer to question number one, that the superintendent had authority to sign the contract.

*See Mancorp, Inc.,* 802 S.W.2d at 228; *Trinity Indus.,* 53 S.W.3d at 863. The motion for JNOV was properly denied. Accordingly, La Villa's first and third issues are overruled.[3]

### III. Alternative Issues

#### A. Defensive Issue

■ In La Villa's first and second alternative issues, it contends the trial court erred by not submitting its defense issue to the jury and by denying its motion for judgment notwithstanding the verdict because the contract was in violation of the Professional Services Procurement Act (Act).

La Villa contends the Act was violated because Garza Design's president, Gomez, testified he had not submitted a proposal or statement of qualifications to the school board prior to accepting the contract and he had not negotiated a fee for his services with the board. La Villa further contends that Superintendent Gonzalez did not recall advertising for any architectural services prior to the contract with Garza Design, nor did he recall if Garza Design submitted a statement of qualifications to the board. Because of this evidence, La Villa contends the contract is void as against public policy. *See* TEX. GOV'T CODE ANN. § 2254.005 (Vernon 2000).

The relevant portion of the Act is found in section 2254.004, which provides:

(a) In procuring architectural ... services, a governmental entity shall:

(1) first select the most highly qualified provider of those services on the basis of demonstrated competence and qualifications; and

---

**3.** La Villa listed in the "issues presented" section of its brief that issue number two was "[w]hether the court erred in denying [a]ppellant's [m]otion for [n]ew [t]rial and rendering judgment for [a]ppellee." However, La Villa failed to include this issue in the "argument" section of the brief. Therefore, the issue is waived. *See* TEX.R.APP. P. 38.1(h).

(2) then attempt to negotiate with that provider a contract at a fair and reasonable price.

Tex. Gov't Code Ann. § 2254.004 (Vernon 2000).

Looking at the plain language of the statute and the evidence presented, it is apparent the statute was not violated. There is no requirement for the architect to submit a statement of qualifications to the board prior to signing a contract with it. The Act merely requires the selection of the most highly qualified architect on the basis of demonstrated competence and qualifications who will agree to a fair and reasonable price. *See id.*

In this case, Garza Design was a return client having performed twenty to thirty jobs for La Villa over a twenty-year period. Former school board president Garza testified that, as president, he was satisfied with Garza Design's demonstrated qualifications and had no reason to seek another architect. Former superintendent Salazar testified that as superintendent he was comfortable and satisfied with Garza Design's work, competency, and product.

▮▮▮ Superintendent Gonzalez had the authority to negotiate with Garza Design on the fee arrangement for the contract on behalf of the board. The superintendent of a school district acts as the agent of the board of trustees. *Bowman,* 801 S.W.2d at 888 (citing *Pena v. Rio Grande City Cons.Indep. Sch. Dist.,* 616 S.W.2d 658, 659–60 (Tex.Civ.App.-Eastland 1981, no writ)). We have already held Superintendent Gonzalez had authorization to sign the contract and bind La Villa to the contract. The acts of the agent of the board bind the board unless the acts were

unauthorized. *See id.* Furthermore, based on witness testimony for La Villa and Garza Design, the fee arrangement of six percent of the construction cost is considered the standard fee for school districts. Therefore, it is clear that the actions of Gonzalez and the board did not violate section 2254.004 of the Act. Because the Act was not violated, the trial court did not err by not submitting La Villa's defensive issue and by denying its judgment notwithstanding the verdict. Accordingly, alternative issues one and two are overruled.

### B. Damages

▮▮▮ In alternative issues three and four, La Villa contends the trial court erred by denying its motion for judgment notwithstanding the verdict because the evidence was legally insufficient to support the jury's answer to question number four.[4] Jury question number four asked, "What amount of money, if any, do you find should be paid to Gomez Garza Design, Inc. under the contract with La Villa Independent School District?" The jury answered, "$52,850.00."

In order to determine whether the amount awarded was justified, the compensation provisions provided under the contract must be examined. Under the contract, Garza Design was to be paid six percent of the total construction cost. Gomez, president of Garza Design, testified the construction cost for the new elementary school was the bond amount of $2,250,000.00. *See Trinity Indus.,* 53 S.W.3d at 863 (we review the evidence in the light most favorable to the jury finding). Six percent of the construction cost equals $135,000.00. From this figure,

---

4. Although La Villa asks this court to use a factual insufficiency review, the proper standard of review for the denial of a motion for judgment notwithstanding the verdict is a legal or no evidence standard of review. *See Trinity Indus. v. Ashland, Inc.,* 53 S.W.3d 852, 863 (Tex.App.-Austin 2001, pet. denied).

Garza Design was to be paid a certain percentage for each phase completed, fifteen percent for completion of the schematic phase, and twenty percent for completion of the design phase. Therefore, Garza Design was to be paid thirty-five percent of the $135,000.00, or $47,250.00. There was also a termination fee of ten percent from the total compensation if Garza Design was terminated during the design phase, which equals $4,725.00. The contract set out that Garza Design was also to be paid a reimbursable expense in the amount of $875.00. Based on these amounts, the total compensation owed for Garza Design's work was $52,850.00.

We have already held the La Villa's school board authorized the contract for the design of the "new elementary school" by Garza Design. We have also held the superintendent is the agent of the school board and, further, that the school board gave the superintendent authorization to sign the contract. Based on these holdings, we find the superintendent had authority to approve the schematic design and order the design development phase to proceed as set forth in the contract. Furthermore, the evidence establishes Superintendent Moron authorized Garza Design to proceed with the design development stage for the new elementary school under the contract. The evidence also indicates that the plans made by Garza Design for the elementary school were used to help promote and pass a bond issue in the amount of $2,250,000.00.

Examining the evidence in the light most favorable to the finding, *see Trinity Indus.*, 53 S.W.3d at 863, we find more than a scintilla of evidence to support the

$52,850.00 award by the jury under the contract. Accordingly, alternative issues three and four are overruled.

## C. Construction Costs

■ In its sixth alternative issue, La Villa contends the trial court erred by disregarding the jury's answer to question number eight. Jury question number eight reads, "Do you find that La Villa Independent School District established the bond issue amount of $2,250.000.00 as the construction cost of the project in the contract in question?" The jury answered, "No."

La Villa contends that because the jury answered "no," the finding precludes Garza Design's recovery. However, the question is not whether the construction cost was $2,250,000.00, but rather, whether La Villa established that total as the construction cost.[5] By answering "no" to the question, the jury merely answered the question as asked in the charge.

■ Furthermore, it is unclear from the record whether the trial court did disregard the answer to question eight. However, whether the trial court disregarded it or not is irrelevant because the question at issue is immaterial. *See C & R Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966); *Second Injury Fund of Tex. v. Garcia*, 970 S.W.2d 706, 710 (Tex.App.-Amarillo 1998, pet. denied); *St. Paul Fire & Marine Ins. Co. v. Bjornson*, 831 S.W.2d 366, 369 (Tex.App.-Tyler 1992, no pet.). A question is immaterial when either it should not have been submitted, or though properly submitted, it has been rendered immaterial by other findings. *C. & R. Transport, Inc.*, 406 S.W.2d at 194.

---

**5.** Gomez testified the total construction cost was $2,250.000.00. *See Pilkington v. Kornell*, 822 S.W.2d 223, 230 (Tex.App.-Dallas 1992, writ denied) (it is within the province of the jury to weigh opinion and expert testimony).

A better question for the jury would have been, "Do you find *the evidence* established the bond issue amount of $2,250,000.00 as the construction cost of the project in the contract in question?"

The jury's answer to question number four rendered question number eight immaterial because the jury had to find the construction cost was $2,250,00.00 in order for the jury to answer number four as it did, regardless of whether or not La Villa established the amount. Accordingly, La Villa's sixth alternative issue is overruled.[6]

### D. Motion for New Trial

██ Finally, in its eighth alternative issue, La Villa contends the trial court erred in denying its motion for new trial because the essential elements of Garza Design's breach of contract claim were not properly submitted to the jury.

Rule 279 of the Texas Rules of Civil Procedure provides, "[u]pon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted [in the jury charge] or requested are waived." Tex.R. Civ. P. 279.

██ However, as the trial court has wide discretion in denying a motion for new trial, we will not disturb its ruling absent a showing of an abuse of discretion. *See Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex.1994); *Coastal Banc SSB v. Helle*, 48 S.W.3d 796, 800 (Tex.App.-Corpus Christi 2001, pet. denied). A trial court abuses its discretion when it acts arbitrarily and without reference to guiding rules and principles. *Coastal Banc SSB*, 48 S.W.3d at 800.

██ The essential elements in a suit for breach of contract are: (1) that a valid contract exists; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; (4)

that the plaintiff was damaged as a result of the breach. *Southwell v. Univ. of Incarnate Word*, 974 S.W.2d 351, 354–55 (Tex.App.-San Antonio 1998, pet. denied).

Upon review of the record, we conclude all of the essential elements of a suit for the breach of contract have been conclusively established by the evidence. As set forth throughout this opinion, the evidence establishes: (1) a valid contract existed; (2) Garza Design performed under the contract; (3) La Villa breached the contract by terminating the contract and not paying Garza Design for its services; and (4) Garza Design suffered damages in the amount of $52,850.00. Because the essential elements for the breach of contract claim were conclusively established, the trial court properly deemed the contract breached as a matter of law. *See Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 186 (Tex.App.-Austin 1998, pet. denied); *Garza v. Southland Corp.*, 836 S.W.2d 214, 219 (Tex.App.-Houston [14th Dist.] 1992, no writ). Therefore, each essential element was not required in the jury charge. Tex.R. Civ. P. 279; *Lafarge Corp.*, 977 S.W.2d at 186. Accordingly, the trial court did not abuse its discretion in denying La Villa's motion for new trial. La Villa's eighth alternative issue is overruled.

Accordingly, the trial court is affirmed.

██

---

6. La Villa failed to include the complaint found in alternative issue number seven in its motion for judgment notwithstanding the verdict. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991). La Villa's seventh alternative issue has, therefore, not been preserved for review. *See* Tex.R. Civ. P. 324(c); Tex. R.App. P. 33.1.