v01874.mc1
















NUMBER 13-01-874-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

ADJUSTERS & LOSS
CONSULTANTS GROUP, INC.,                                                  Appellant,

v.

JOHNSON INTERNATIONAL
MATERIAL, INC.,                                                                         Appellee.
                                                                                                                                      

On appeal from the 107th District Court of Cameron County, Texas.
                                                                                                                      

MEMORANDUM OPINION

Before Justices Hinojosa, Yañez, and Castillo
Memorandum Opinion by Justice Yañez
 

          In this breach-of-contract suit, appellant, Adjusters & Loss Consultants Group, Inc.
(“Adjusters”), appeals a judgment in favor of appellee, Johnson International Materials, Inc.
(“JIMI”). In six issues, Adjusters contends: (1) the trial court erred in denying its motion
for directed verdict, motion for judgment notwithstanding the verdict, and motion for new
trial; (2) the evidence is legally and factually insufficient to support the trial court’s judgment
that JIMI complied with its contract with Adjusters (issues two and five); (3) it is entitled as
a matter of law to seven percent of the insurance proceeds assigned to it by JIMI; (4) the
trial court erred in entering judgment on the jury’s verdict and in denying its motion for new
trial; and (5) the trial court erred in failing to award it damages and attorney’s fees. We
reverse and render judgment in favor of Adjusters.
Background 
          As this is a memorandum opinion and the parties are familiar with the facts, we will
not recite them here except as necessary to advise the parties of the Court's decision and
the basic reasons for it. See Tex. R. App. P. 47.4. 
            JIMI, a company that buys and sells used clothing, has several warehouses in
Brownsville, Texas. On August 2, 1999, a fire destroyed one of the warehouses and
damaged several others. The next day, James Johnson, JIMI’s president, received an
unsolicited call from Gerald Marshall, an agent for Adjusters.


 Marshall explained that
Adjusters could provide services in filing an insurance claim for the losses related to the 
fire. Johnson faxed to Marshall the declarations page of his insurance policy, which set out
the coverage for the warehouses. After reviewing the declarations page, Marshall faxed
Johnson a one-page contract with two sections: a section designated “Claim Notice” on top
and a section designated “Assignment Contract & Agreement For Compensation” on the
bottom. After negotiating the fee, Johnson signed the contract and faxed it back to
Marshall.
          The following day, Marshall and his senior adjuster, Larry Moore, met with Johnson
at Johnson’s Brownsville office. A second contract containing the same provisions was
signed. Marshall then reviewed Johnson’s insurance policy, gathered information
concerning Johnson’s business and the fire, inspected the site, and helped Moore contact
local contractors. Marshall returned to Dallas that day, but Moore returned the next day 
to take photographs and gather additional information. After completing his work, Moore
returned to Dallas. Later that day, Johnson met with his insurance agent. Following the
meeting with his insurance agent, Johnson sent Marshall the following letter:



            “ATTN: GERALD C. MARSHALL, JR. 
            I APPRECIATE YOUR ATTENTION TO OUR FIRE LOSS.
              I HAVE ALWAYS SETTLED MY OWN CLAIMS AND WISH TO
CANCEL MY CONTRACT WITH YOU AND YOUR COMPANY.”
          After receiving the fax, Marshall called Johnson and informed him that Adjusters
intended to hold him to the terms of the contract. Johnson, however, continued to
negotiate his claim directly with his insurance carrier and eventually settled the claim. 
Before tendering payment to Johnson, the carrier withheld the seven percent in fees
claimed by Adjusters,


 filed an interpleader, and deposited the funds into the registry of the
court. Adjusters and JIMI answered and filed their respective cross-claims to the funds.


 
Adjusters contends that the funds were assigned to it in the August 3, 1999 contract and
that JIMI breached the contract by not paying it those monies. JIMI contends that it
rescinded the contract and that any work performed by Adjusters was performed without
its authority.
          The case was tried to a jury. At the conclusion of the evidence, Adjusters moved
for an instructed verdict on various grounds. Adjusters was granted an instructed verdict
on all of JIMI’s defensive issues, including excuse, fraud in execution of the contract, and
ambiguity.


 Adjusters also argued it was entitled to an instructed verdict that the contract
contained an unqualified assignment by which JIMI lost all control over the percentage of
funds assigned and that Adjusters was therefore entitled to the funds as a matter of law. 
In support of its assignment argument, Adjusters relied on Univ. of Tex. Med. Branch at
Galveston v. Allen, 777 S.W.2d 450, 451 (Tex. App.–Houston [14th Dist.] 1989, no writ)
(assignor, after an unqualified assignment and notice to the obligor, generally loses all
control over the chose and can do nothing to defeat rights of assignee). The trial court
denied that portion of Adjusters’ motion for directed verdict in which it claimed entitlement
to the assignment of seven percent of the insurance proceeds. 
          The case went to the jury solely on the issues of whether JIMI failed to comply with
its agreement with Adjusters, and if it had not complied, what amount JIMI was entitled to
in reasonable attorneys’ fees. The jury answered “no” to the question of whether JIMI
failed to comply with the agreement and awarded it $25,000 in attorneys’ fees. Adjusters
filed a motion for judgment notwithstanding the verdict and motion for new trial, arguing,
among other things, that no evidence supported the jury’s finding that JIMI complied with
the agreement because: (1) it was undisputed that JIMI terminated the agreement and
failed to pay Adjusters; and (2) the trial court had ruled JIMI was not entitled to any jury
instructions on its defensive issues of excuse, ambiguity, illegality and/or fraud. The trial
court denied Adjusters’ motion for judgment notwithstanding the verdict and its motion for
new trial. This appeal followed.
Standards of Review and Applicable Law 
          A party is entitled to a directed verdict only when reasonable minds could reach but
one conclusion under the available evidence. Vance v. My Apartment Steak House of San
Antonio, Inc., 677 S.W.2d 480, 483 (Tex. 1984); Koepke v. Martinez, 84 S.W.3d 393, 396
(Tex. App.–Corpus Christi 2002, pet denied). If there is any conflicting, probative evidence,
the trial court must submit the issue to the jury. Nelson v. Am. Nat’l Bank, 921 S.W.2d 411,
415 (Tex. App.–Corpus Christi 1996, no writ). 
          A directed verdict is proper when: 1) a defect in the opponent’s pleadings makes
them insufficient to support a judgment; 2) the evidence conclusively proves a fact that
establishes a party’s right to judgment as a matter of law; or 3) the evidence offered on a
cause of action is insufficient to raise an issue of fact. Koepke, 84 S.W.3d at 395.
          The denial of a motion for directed verdict lays the foundation for challenging the
evidence on appeal by points of error contending there was “no evidence” of a certain fact
or that a fact was established “as a matter of law.” Id. We review the denial of a directed
verdict by a legal sufficiency or “no evidence” standard of review. Id. 
          When reviewing a no-evidence challenge, we consider only the evidence and
inferences supporting the finding and disregard all evidence and inferences to the contrary.
Formosa Plastics v. Presidio Eng’rs, 960 S.W.2d 41, 48 (Tex. 1998); Adams v. H. & H.
Meat Prod., Inc., 41 S.W.3d 762, 770 (Tex. App.–Corpus Christi 2001, no pet.). Any
evidence of probative force, or more than a scintilla, supporting the finding requires us to
uphold it. Adams, 41 S.W.3d at 770. There is some evidence, or more than a scintilla,
when the evidence creates more than a mere surmise or suspicion of its existence. Id.
(citing Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)).  
          A judgment notwithstanding the verdict is proper only when a directed verdict would
have been proper. Fort Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394
(Tex. 1991); See Tex. R. Civ. P. 301. In reviewing the trial court’s granting or denying a
motion for judgment notwithstanding the verdict, we must consider only the evidence and
the reasonable inferences that support the jury’s answers, disregarding all contrary
evidence and inferences. Johnson & Johnson Med., Inc. v. Sanchez, 924 S.W.2d 925, 929
(Tex. 1996); Live Oak Ins. Agency v. Shoemake, 115 S.W.3d 215, 218 (Tex. App.–Corpus
Christi 2003, no pet.). The jury’s answer to a question should be disregarded if there is no
evidence to support it. Brown v. Bank of Galveston, 963 S.W.2d 511, 513 (Tex. 1998);
Salinas v. Rafati, 948 S.W.2d 286, 289 (Tex. 1997). If more than a scintilla of evidence
supports the jury’s finding, the jury’s verdict and not the trial court’s judgment must be
upheld. Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003) (per curiam). 
More than a scintilla of evidence exists where the evidence supporting the finding, as a
whole, “rises to a level that would enable reasonable and fair-minded people to differ in
their conclusions.” Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995).
Analysis
          In its second issue, Adjusters contends the evidence is legally insufficient to support
the jury’s finding that JIMI complied with its contract with Adjusters. Thus, we examine the
evidence to determine if there is more than a scintilla of probative evidence to support the
jury’s finding. We conclude there is not.
          The following facts are undisputed:
1) JIMI signed a contract with Adjusters on August 3, 1999;
 
2) Under the terms of the contract, Adjusters was to assist JIMI in compiling the
necessary paperwork for assessing the value of JIMI’s fire loss and adjusting the
claim;
 
3) Under the terms of the contract, JIMI agreed to pay Adjusters, and assigned to
it, seven percent of the amount adjusted or otherwise recovered on the loss as its
fee;
 
4) Adjusters’ representatives traveled to Brownsville, Texas on August 4, 1999 and
began the process of gathering information on the fire loss;
 
5) On August 5 James Johnson, JIMI’s president, sent Adjusters a letter
terminating the contract;
 
6) JIMI settled the claim and did not pay Adjusters any money.
 
In his letter terminating the contract, the only reason Johnson gave was that he always
settled his own claims. At trial, however, Johnson testified that he told Marshall, in a
telephone conversation, that he did not like the way Adjusters did business. Johnson
testified that his principal complaints were:
1) he only wanted to assert a claim for the cash value of the building, but
Marshall wanted to claim replacement cost of the building;
 
2) Marshall told him he could get more money by asserting a claim for
replacement cost, taking the money, and not rebuilding the warehouse, a
practice Johnson believed to be fraudulent;
 
3) Marshall wanted to seeks bids only from contractors who would submit
high bids, which Johnson thought was wrong and fraudulent;
 
4) he wanted to move wet bales of clothing to a Houston warehouse, but
Marshall wanted him to rent a warehouse to store the clothing and charge
the rental cost to the insurance company;
 
5) Marshall wanted to submit a claim for a small shop on the property that
did not burn down; and
 
6) Marshall told him the process might take two or more years to settle. 
 
The trial court allowed JIMI to amend its pleadings immediately before trial to assert its
defensive pleadings. During trial, JIMI sought to establish its defenses of fraud, excuse,
ambiguity, and mitigation of damages. At the conclusion of the trial, however, the trial court
granted Adjusters’ motion for instructed verdict on all of JIMI’s affirmative defenses. 
In response to Adjusters’ challenge to the legal sufficiency of the evidence supporting
JIMI’s compliance with the contract, JIMI argues that Adjusters failed to prove JIMI
breached the contract as a matter of law. According to JIMI, Adjusters was required to
prove: 1) that a valid contract existed; 2) that it performed or tendered performance; 3) that
JIMI breached the contract; and, 4) it was damaged as a result. See La Villa Indep. Sch.
Dist. v. Gomez Garza Design, Inc., 79 S.W.3d 217, 225 (Tex. App.–Corpus Christi 2002,
pet. denied). Specifically, JIMI contends that Adjusters failed to prove elements two and
three: that Adjusters performed the contract and that JIMI breached it. We disagree.
The validity of the contract was not disputed. To prove performance, Adjusters had to
prove that it fully performed the contract or that it tendered performance. Id. It is
undisputed that Marshall and Moore traveled to Brownsville on August 4 and met with
Johnson. Marshall testified that Johnson had faxed him the declarations page of the policy
the previous day before in order for Marshall to determine the scope of the insurance
coverage. While Marshall interviewed Johnson about the business, Moore took pictures,
measured the burned-out building, and sought repair estimates. Marshall testified that he
explained to Johnson how the claim would be made and that he also faxed a letter to an
insurance representative informing the insurer that he estimated the loss to be in excess
of two million dollars. Marshall also asked that the insurance company advance
$300,000.00 to Johnson for emergency debris removal and expenses. The letter also
requested that an insurance company representative contact Adjusters in order to schedule
an inspection of JIMI’s property.
  It is undisputed that Johnson sent a letter to Adjusters terminating the contract. When
informed of the termination, Marshall wrote Johnson that a majority of the work had already
been performed; he offered to complete the work, but Johnson refused. Marshall’s 
associate completed the claim and submitted it to the insurance company on August 6th.
     JIMI argues that a fact issue exists on whether it breached the agreement. Johnson
testified he did not feel that he breached the agreement “because [sic] the way Adjusters
was conducting” itself. However, as noted, JIMI’s affirmative defenses, including excuse
and fraud, were rejected by the trial court and were not submitted to the jury. 
     We conclude that the evidence is legally insufficient to support the jury’s finding that
JIMI complied with its agreement with Adjusters. We sustain Adjusters’ second issue.
     In its first issue, Adjusters contends the trial court erred in denying its motion for
directed verdict in which it claimed entitlement to the assignment of seven percent of the
insurance proceeds. 
     The record reflects that Adjusters completed its on-site inspection of the damaged
property before Johnson terminated the agreement. After receiving Johnson’s termination
letter, Adjusters offered to complete the work under the contract. JIMI contends that
Adjusters’ work was worthless because it disagreed with Adjusters’ procedures for
submitting the claim. According to Johnson, he did not approve of Adjusters’ plan to base
the claim on a replacement cost basis. In his letter terminating the contract, however,
Johnson did not cite any disagreement over Adjusters’ procedures in making the claim. 
We conclude that the record in this case conclusively shows that: (1) there was a valid
contract; (2) under the terms of the contract, JIMI was to pay Adjusters seven percent of
the settlement proceeds; (3) JIMI unilaterally terminated the contract; and (4) JIMI settled
the claim and refused to pay Adjusters the seven percent of the proceeds. The record also
shows that Adjusters tendered performance by traveling to Brownsville and conducting an
investigation of the site in preparation for filing the claim on JIMI’s behalf. 
     We hold that, based on the record, reasonable minds could reach only one
conclusion: that JIMI breached its contract with Adjusters, and pursuant to the assignment
contract, Adjusters is entitled to seven percent of the insurance proceeds, in the amount
of $84,000.00, as a matter of law. Accordingly, we hold that the trial court erred in denying
that portion of Adjusters’ motion requesting an instructed verdict that it is entitled to the
funds. Adjusters’ first issue is sustained. 
     In their sixth issue, Adjusters contends the trial court erred in failing to award it
damages and attorney’s fees. We have already determined that Adjusters is entitled to the
$84,000.00 in insurance proceeds. The record reflects that the parties agreed to the
amount of attorney’s fees for each side and stipulated to the court that the fees were
necessary and reasonable. The parties agreed to Adjusters’ stipulation that it had incurred
$28,358.00 in attorney’s fees. The parties also agreed to $7,500.00 in appellate attorney’s
fees. Accordingly, we hold that Adjusters is entitled to $28,358.00 in attorney’s fees plus
$7,500.00 in appellate fees. We sustain Adjusters’ sixth issue. 
Because of our disposition of Adjusters’ first, second, and sixth issues, we need not
address its remaining issues. See Tex. R. App. P. 47.1. 
We REVERSE the trial court’s judgment and RENDER judgment that Adjusters is
entitled to damages in the amount of $84,000.00, plus $28,358.00 in attorney’s fees and
$7,500.00 in appellate attorney’s fees, plus pre- and post-judgment interest. 

 
                                                                                                                  
                                                          LINDA REYNA YAÑEZ
                                                                      Justice 
 
 
 
Memorandum opinion delivered and filed this the 
10th day of November, 2004.